MAUDY LAUDINE COLLIER KING ET AL V. ELMO PAYNE ET AL.

No. A-5815. Decided July 11, 1956.
Rehearing overruled July 25, 1956.
(292 S.W. 2d Series 331)

*William F. Walsh* and *William E. Naler*, both of Houston, for relators.

*McWhorter, Cobb & Johnson* and *H. E. Griffith*, all of Lubbock, for respondents.

MR. JUSTICE CALVERT delivered the opinion of the Court.

This is an original mandamus proceeding filed in this court by Maudy Laudine Collier King and Clyde W. Woody, guardian ad litem of Mrs. King's minor children by a former marriage, Earline and Cecil Faye Collier, against Elmo Payne, Clerk of the Court of Civil Appeals for the Seventh Supreme Judicial District, the Justices of said Court and Keystone-Fleming Transport Co., Inc., respondents. The purpose of the proceeding is to enforce a right of appeal on pauper's oath by requiring the acceptance by, and filing in, the Court of Civil Appeals of the appeal record in a case appealed from the district court of the 72nd Judicial District, Lubbock County. The proceeding grows out of facts detailed below. Our holding is that relator Woody is entitled to have writ of mandamus issued as prayed for, but that Mrs. King is not so entitled.

A suit for damages for wrongful death based on gross negligence of the defendant, Keystone-Fleming Transport Co., Inc., was filed in the District Court by Mrs. Maudy King, suing for herself and as next friend for the minor children of herself and her deceased husband, Cecil Collier. At the beginning of the trial the court, being apprehensive of a conflict of interest between Mrs. King and her minor children, appointed Mr. Woody guardian ad litem to represent the children.

At the conclusion of the plaintiff's evidence the court instructed a verdict for the defendant. Judgment for the defendant was rendered and entered on November 26, 1955. On November 29, Mrs. King, joined pro forma by her husband, Robert King, and purporting to act for herself and as next friend of her minor children, filed an affidavit in lieu of cost bond, as provided for in Rule 355, Texas Rules of Civil Procedure, swearing that plaintiffs were "unable to pay the costs of appeal, or any part thereof, or to give security therefor." On December 1 the defendant, Keystone-Fleming Transport, Inc., acting through its attorney and pursuant to the foregoing Rule, filed a contest of plaintiff's affidavit in which it swore "that Maudy Laudine Collier King and her husband, Robert King, are not too poor to pay the costs of the court; * * * that each of said parties are not unable to give security for costs of court, but that each of them are fully able to pay the same, as well as to give security therefor, which defendant is ready to verify."

On the day the contest was filed the trial judge entered an order setting the matter for hearing on December 10 and directed that notice of such hearing be served on the attorney representing Mrs. King and on Mr. Woody. On December 2 a precept to serve such notice was duly issued by the clerk of the district court and mailed to the sheriff of Harris County to be served. The street address of the parties to be served was shown in the precept. The sheriff of Harris County evidently overlooked the address contained in the precept, and when the address was also furnished to him by the district clerk by letter of December 8, he returned the precept unserved, stating that the address was received too late for service.

On Dcember 9 counsel for Mrs. King wrote the trial judge a letter from Houston, of which the record contains no copy, to which the judge replied by letter of December 15 stating that the defendant had filed a contest of the affidavit and that a hearing had been set originally for the previous Saturday. The letter further advised that the court reporter had the statement of facts ready but was reluctant to deliver it, without being paid, until the contest of the affidavit of inability to pay costs had been disposed of. The letter further advised that the writer did not know whether Mrs. King had been paid workmen's compensation and that when it was paid Mrs. King "should certainly be able to pay the costs incurred in connection with this appeal." The letter closed by inquiring as to counsel's "attitude with

reference to the contest to the affidavit of inability to pay the costs of appeal."

The judge's reference to the possible payment of workmen's compensation insurance grew out of the fact that Mrs. King and her children had theretofore recovered a trial court judgment against Pan American Insurance Company as compensation insurer for Keystone-Fleming Transport Co., Inc., for workmen's compensation benefits. The Amarillo Court of Civil Appeals had affirmed the judgment on May 23, 1955, and had overruled a motion for rehearing on June 20, 1955. 280 S.W. 2d 309. This court had refused a writ of error in the case on October 19, 1955, and had overruled motion for rehearing on the application for writ of error on November 16, 1955. The insurer had filed in this Court a supplemental motion for rehearing which was not overruled until December 19, 1955. The record here indicates Mrs. King's interest in the judgment was about $3,000.00.

Counsel for Mrs. King replied to the judge's letter on December 19, advising that he did not know whether the workmen's compensation insurance had been paid and advising that if Mrs. King "had the funds to make a trip to Lubbock to appear in a hearing, she would have the funds to make the bond." The letter contained the following statements: "if the defendants have information that the plaintiff has funds in her possession (whether the insurance funds or what) then it would appear that they should show to the courts' satisfaction that such money has been paid, otherwise, a hearing is unnecessary and would only put an unnecessary burden on the plaintiff and us * * *. It appears to me, under the rules, that defendant, in contesting the affidavit, has the burden to prove that plaintiff has funds with which to meet the costs of appeal, at the time of the contest * * *." The letter continued: "I expect to be in San Angelo during Christmas, and if the court feels a hearing is necessary, I will be glad to come on up to Lubbock for that purpose; I ask the court to set the time for hearing either for Friday of this week (23rd) or the first day the court will be available after Christmas Day * * *."

The matter was then set for hearing and was heard on December 28. A transcript of the testimony of the hearing indicates that an affidavit signed by Robert King was introduced in evidence, but the affidavit is not in the record. In offering the affidavit counsel for Mrs. King stated that it was "substantially the same as the affidavit of the plaintiff which has heretofore

been filed." Mrs. King offered no other evidence of any character in support of her affidavit.

The defendant offered in evidence a copy of the judgment awarding the plaintiffs workmen's compensation benefits. Defendant's attorney was then sworn and testified as a witness. He testified to the facts with respect to the affirmance by the Court of Civil Appeals of the trial court's judgment in the compensation case and the rejection of writ of error in such case by this Court. He further testified that he had been authorized by his client, Pan American Insurance Company, since November 23, 1955, to pay off the judgment awarding workmen's compensation benefits to the plaintiffs. He then offered in open court, the sum of $250.00 in partial payment of said judgment.

At the conclusion of the hearing the judge stated that he did not intend to rule immediately, and he continued: "I doubt that the plaintiff has sustained the burden that is on him to prove the truth of these affidavits in lieu of cost bond. The court rules provide that the burden of proof is on the plaintiff to prove the truth of the matters set out in the affidavit. I doubt that it has sustained that burden but anyhow, I want this woman to have the right to appeal if she can. * * * It is 17 days before it (statement of facts) has to be filed, if my calculations are right, before it has to be filed in the trial court. During that interval, if the Pan American Insurance Company pays off, I see no reason why she can't pay the costs on appeal or put up cash in lieu of bond or something of that kind and perfect her appeal in that way, but I don't intend to enter a ruling until a few days, to give the defendant an opportunity to - - - that is the Pan American Insurance Company further opportunity to pay that judgment off so that she will be able to pay the costs on appeal. * * * I'm going to hold up ruling on this motion here today for these 10 days to see if Pan American hasn't paid off that judgment so that woman will have the money available for use for that appeal if she wants it."

On December 31, 1955, the judge wrote counsel for Mrs. King that he understood that draft for compensation benefits in the sum of $2,911.89 had been forwarded to her. On January 6, 1956, judgment was entered sustaining the contest and ordering that the "parties plaintiff, be not admitted to appeal therein as poor persons, without paying or giving any security for costs." On January 13, 1956, a bond for costs in the penal sum of $600.00, with Mrs. King and the minor plaintiffs as prin-

cipals, and Lawyers' Surety Corporation, as surety, was filed in the office of the district clerk and approved by the clerk.

On January 21, 1956, Mrs. King and Mr. Woody presented the appeal record to respondent Payne, Clerk of the Court of Civil Appeals, and he, acting pursuant to authority contained in Rule 388, Texas Rules of Civil Procedure, refused to file the same. Thereupon, Mrs. King and Mr. Woody presented to the Court of Civil Appeals at Amarillo their motion for leave to file a petition for writ of mandamus to compel the clerk to accept and file said record. The motion for leave to file was denied by the Court of Civil Appeals. 287 S.W. 2d 293.

■ The appeal bond was filed too late to invoke appellate jurisdiction. Rule 356, Texas Rules of Civil Procedure, requires that a bond for costs on appeal "shall be filed with the clerk within 30 days after the date of rendition of judgment or order overruling motion for new trial." There is no provision or authority for extending the time within which to file a bond. Maples v. Service Mutual Ins. Co., Texas Civ. App., 169 S.W. 2d 500, writ dismissed. In De Miller v. Yzaguirre, Texas Citv. App., 143 S.W. 2d 425, in which this Court refused a writ of error unconditionally, it is clearly held that delay in acting on a contest of an affidavit in lieu of bond does not operate to extend the time for the filing of bond. See also Brandon v. Tartt, Texas Civ. App., 220 S.W. 2d 672, no writ history. The clerk and the Court of Civil Appeals were clearly correct in holding that the appeal bond filed on January 13 did not operate to perfect the appeal.

If either relator is entitled to have the record filed in the Court of Civil Appeals, it must be because the appeal was perfected without the bond. We shall consider separately the respective rights of Mr. Woody and Mrs. King to appeal without giving bond for costs or making deposit in lieu thereof, and shall give out attention first to the right of Mr. Woody.

■ We conclude that the appeal of Mr. Woody as guardian ad litem was perfected by the giving of notice of appeal. Article 2276, Vernon's Annotated Texas Statutes, provides that "executors, administrators and guardians appointed by the courts of this state shall not be required to give bond on any appeal or writ of error taken by them in their fiduciary capacity." This Court has heretofore held that a guardian ad litem comes within the letter of the foregoing statute. Schonfield v. Turner, Texas Sup. Ct., 6 S.W. 628.

■ Under the provisions of Article 2159, Vernon's Annotated Texas Statutes, a trial court could appoint guardians ad litem only for incompetent defendants, but Rule 173, Texas Rules of Civil Procedure, expressly provides for the appointment of a guardian ad litem for an incompetent plaintiff or intervenor who is represented by a next friend or a guardian who appears to the court to have an interest adverse to the incompetent. The Court of Civil Appeals in this case (287 S.W. 2d 294) and the Fort Worth Court of Civil Appeals in the case of Henderson v. Applegate, 203 S.W. 2d 548, 552, writ refused, N.R.E., on which the Court of Civil Appeals in this case relied, appear to have overlooked the fact that in carrying Article 2159 into the Rules of Civil Procedure as Rule 173 this Court enlarged the power of the trial court to appoint guardians ad litem for incompetents.

Respondents contend that the rights of the minor plaintiffs are governed by Rule 44, Texas Rules of Civil Procedure, which, after providing for suits by "next friends," expressly provides that "such next friend shall have the same rights concerning such suits as guardians have, *but shall give security for costs, or affidavits in lieu thereof,* when required."

We see no inconsistency between Rule 173 and Rule 44. Actually, one might say that Rule 173 is complementary of Rule 44 since it is expressly designed for a case in which the incompetent is already represented in the suit by "next friend" or "a guardian," but in which the next friend or guardian "appears to the court to have an interest adverse to" that of the incompetent. Rule 173 thus provides for a contingency not covered by Rule 44, to wit, the appearance, after the suit is filed, of a probable conflict of interest between the real plaintiff in interest and his guardian or next friend. This court cannot say that the trial court erred in concluding that there was a probable conflict of interest between Mrs. King and her minor children.

We consider next the right of Mrs. King.

As heretofore noted, the trial judge entered an order sustaining the contest to Mrs. King's affidavit of inability to pay the costs of appeal or give security therefor. Ordinarily that order would foreclose against an appellant the right to have the appeal record filed in the Court of Civil Appeals in the absence of the timely filing of an appeal bond. In this case, however, Mrs. King urges an abuse of discretion on the part of the

trial judge in sustaining the contest. Her theory is that the record shows an abuse of discretion by the trial judge in that it shows that the order sustaining the contest was based on the belief by the trial judge that relators would, at some future time, obtain the necessary funds to perfect her appeal. Her contention is that in deciding the issue the trial judge was confined to a consideration of the facts as they then existed, and that he could not take into account the probability that the affiant might, or would, obtain funds in the future.

■ It is well settled that to be entitled to a writ of mandamus one must show a clear legal right thereto. It follows that the question here to be decided is not whether the reason indicated by the trial judge for sustaining the contest was sound, nor yet whether respondent, Keystone-Fleming, obtained some advantage by the dilatory tactics of counsel for Pan American, who was also its counsel, in paying the compensation judgment. The question is whether an examination of the record as a whole establishes that the trial judge abused his discretion in sustaining the contest. This court has heretofore stated the question in this language: "Does the record as a whole show by a preponderance of the evidence that the applicant would be unable to pay the costs, or a part thereof, or give security therefor, if he really wanted to and made a good-faith effort to do so?" Pinchback v. Hockless, 139 Texas 536, 164 S.W. 2d 19, 20. As underlying reasons for the form in which the court laid down the foregoing test, it was said:

"Where, from the record as a whole, it really appears that a party is unable to pay the costs, or give security therefor, the court should unhesitatingly grant the relief prayed for. On the other hand, it must be remembered that if a party is relieved of the necessity of paying the costs for which he is otherwise liable, those who file the papers, serve the process, or prepare the statement of facts or transcript may have to do their work without pay. Likewise, the witnesses who are compelled to leave their employment in order to attend court may have to go uncompensated for the time lost by them. Some of them may be as poor as the party who seeks to be exempted from the payment of the costs. No man should be allowed the privilege of requiring others to thus work for him without pay if he is really able to pay the costs, or give security therefor. The rules which exempt the poor from the payment of costs serve a useful purpose, but if the courts allow the privilege granted thereby to be abused by those who, in fact, ought to pay, this may lead to the abolition of the exemption."

We must hold that the record before us does not, under the test laid down in Pinchback v. Hockles, supra, establish an abuse of discretion by the trial court.

It is to be noted that Mrs. King offered no evidence whatever in support of her affidavit. If Keystone-Fleming had offered no evidence the trial court would have had no alternative but to sustain the contest, for parapgraph (d) of Rule 355 expressly provides that upon a hearing of the issue made by the affidavit and the contest "the burden of proof shall rest upon the appellant to sustain the allegations of his affidavit." How can the fact that Keystone-Fleming offered evidence that Mrs. King was then entitled to and would soon receive certain cash benefits, and that the trial court heard and considered that evidence, serve to discharge Mrs. King's burden of proving her inability to pay the costs of appeal or give security therefor? Of course it cannot. The evidence offered by Keystone-Fleming surely does not put Mrs. King in a better position than if it had not been offered.

■ Moreover, relators are wrong in their contention that in deciding the question the trial judge could not take into account the fact that Mrs. King probably would soon receive a substantial sum in cash. If the anticipated payment was sufficiently certain to serve as security for a loan of an amount necessary to comply with Rule 354, Texas Rules of Civil Procedure, it was the duty of the judge to give consideration to that fact. Any other holding would permit a litigant with a large and certain but undistributed inheritance to litigate on pauper's affidavit. The trial judge may require a litigant who is without funds but who has ready and adequate credit to use that credit to give security for costs. Pincheck v. Hockless, supra.

The opinion of the Court of Civil Appeals in the compensation case contains this statement: "No issue exists as to the right of the claimants to recover workmen's compensation insurance. * * * The principal issue is whether appellant, Pan American Insurance Company, is the carrier of the workmen's compensation insurance in issue or whether appellee, Lumbermen's Lloyds, is the insurer." 280 S.W. 2d 309. In their brief before this court, relators state: "In effect everyone agreed that relator was entitled to the money, but no one wanted to pay her." It thus appears that it was admitted on all sides that Mrs. King was entitled to recover workmen's compensation benefits in a substantial amount. She had a judgment for those benefits, which judgment had been affirmed by the Court of

Civil Appeals. This court had refused an application for writ of error in the case and had overruled a motion for rehearing thereon before Mrs. King filed her affidavit in this case. Under the circumstances, even with a supplemental motion for rehearing pending in this court, it is not unreasonable to believe that she could have borrowed against her judgment, or, at the very least, that she should have proven an unsuccessful effort to do so. There is in the record no evidence of any effort by Mrs. King to comply with Rule 354, Texas Rules of Civil Procedure.

Counsel suggests that we own and should exercise the power to relax the Rules for Mrs. King's benefit. The fact that she has lost her right of appeal inadvertently is enough to excite our sympathy for Mrs. King's plight, but it does not supply proof by a preponderance of the evidence that she was unable to pay the costs of appeal or give security therefor.

An appellate court always regrets to see a litigant lose his rights through failure to comply with procedural rules, but we cannot enforce the rules against one litigant and relax them for another. And if we relax them for all litigants we abolish them. They must be applied equally and impartially to the well-intentioned and the slothful. Any other manner of administering them would make them tools for aiding the favored and oppressing the disfavored.

Mrs. King's prayer for writ of mandamus is denied. Mr. Woody is entitled to the writ as prayed for. Under our established practice, the writ itself will be withheld pending compliance with our holding by the Clerk and Justices of the Court of Civil Appeals, which will undoubtedly follow.

Costs are adjudged in equal amounts against Mrs. King and Keystone-Fleming Transports, Inc.

Opinion delivered July 11, 1956.

JUSTICE GARWOOD joined by JUSTICE SMITH, dissenting.

Our practice, with rare exceptions, is for individual justices to take cases in rotation following oral argument and write opinions embodying their personal views of the proper decision to be rendered and reasons therefor prior to actual decision by the court. Upon submission of these tentative opinions to conference, they are approved either absolutely or with changes or rejected or held up for decision until submission by some

other justice of a dissent or a proposed substitute opinion. If, as often happens, the views of the latter prevail, they become the opinion of the court. The result in such instances usually is that four or three opinions are written by two justices, a successful dissent being converted into a majority opinion and the originally submitted tentative opinion of the court being converted into a dissent.

In the instant case the tentative opinion submitted by the undersigned has thus been superseded and a dissent is accordingly in order, but for obvious reasons of economy of time and because the result and views of the court and the undersigned differ only in respect of the rights of the petitioner, Mrs. King, as distinguished from those of the guardian ad litem of her children, the original tentative opinion is copied below in lieu of a formal dissent, Mr. Justice Smith joining in the conclusions therein expressed.

The subject matter of this original mandamus suit is (a) the procedure of appeals on pauper's oath and (b) the right, if any,, of guardians ad litem to appeal without bond or pauper's oath.

Our relators, Mrs. Maudy King in her own right, and Clyde W. Woody, Esq., as guardian ad litem of Mrs. King's minor children b yan earlier marriage, Earline and Cecil Faye Collier, seek to require our respondents, the clerk and justices of the Amarillo Court of Civil Appeals, to file and accept their appeal record in Cause No. 25798 in the 72nd Judicial District Court, Lubbock County, in which judgment was entered November 26th, 1955, on an instructed verdict against relators as plaintiffs and in favor of our other respondent, Keystone-Fleming Transport, Inc., as defendant. The suit was an action for death of Cecil Collier, an earlier husband of relator Mrs. King and father of minor relators, and was based on the alleged gross negligence of the respondent-defendant Transport Company, employer of the deceased.

The respondent clerk, upon examination of the transcript (Rule 388, Texas R. Civ. Proc.) refused to file the appeal record when presented, and relators' consequent petition to the Court of Civil Appeals for mandamus was likewise refused. The groounds of refusal were that: (a) as to Mrs. King individually, an appeal bond, which she filed on January 13th, 1956, over two weeks after expiration of the statutory 30 days from the

date of the judgment (Rules 354 and 356, Texas R. Civ. Proc.) was ineffective, and her prior efforts to proceed by pauper's oath (Rule 355) were likewise ineffective; and (b) as to the guardian ad litem, who had filed neither a bond nor pauper's oath, he was not exempted from these requirements by his alleged fiduciary status. 287 S.W. 2d 293.

Suit 25798 was filed by Mrs. King as next friend of the children (as well as in her own right) but the trial court, at the beginning of the trial, appointed Mr. Woody above mentioned as guardian ad litem upon apprehension of a conflict of interest between the plaintiffs following a suggestion to this effect by the attorney for the respondent-defendant Transport Company, Charles L. Cobb, Esq. Rule 173, Texas R. Civ. Proc.

The trial court judgment (November 26th, 1955, recited relators' exception and notice of appeal, but no bond (Rule 354) was filed by any of them until Mrs. King sought to file one on January 13th, 1956, as aforesaid, on behalf of herself and the children. Previously, however, on November 29, 1955, Mrs. King had filed a pauper's oath in lieu of a bond (Rule 355(a) ) to which, on December 1st, the respondent-defendant Transport Company had filed its contest of her inability to pay (Rule 355 (c) ) sworn to by its above-mentioned attorney, Mr. Cobb.

At the latter time, it appears that Mrs. King had a judgment for some $3000 in her favor against Pan American Insurance Company in a Workmen's Compensation suit incident to her earlier husband's death, but she had not received payment, because the named insurance carrier, although held liable to the relators in the trial court and Court of Civil Appeals, had carried to the Supreme Court the issue of liability as between it and another insurer, and while this issue had been finally decided against it in the latter court by refusal of the motion for rehearing of its petition for writ of error on November 16th, 1955 (well *before* the filing of the pauper's oath and contest in Cause No. 25798) a "supplemental motion for rehearing" thereafter sent to the court was still "pending" and was not returned until December 19th (18 days after filing of the contest).

Mr. Cobb aforesaid also represented Pan American Insurance Company in the Workmen's Compensation suit, but evidently the relators were there represented by counsel other than their counsel in Cause No. 25798.

Forthwith upon filing of the contest to the pauper's oath, the judge set the matter for a hearing to be held on December 10th at Lubbock, and the clerk sent a notice thereof to the sheriff of Harris County for service on relators' counsel, including the guardian ad litem, who had their offices at Houston. For some peculiar reason the sheriff ignored the statement of the street address of counsel on the face of the Precept and after several days' delay returned the document with an endorsement dated December 12th, stating "Returned not executed — Received address too late for service — Please reset and return."

On December 9th counsel for Mrs. King wrote the trial judge a letter from Houston, of which the record contains no copy, but to which the judge replied by letter of December 15th, indicating the reluctance of the court reporter to deliver the statement of facts before disposition of the contest of the pauper's oath, enquiring as to the "attitude" of counsel toward the contest and including a comment that whenever Mrs. King should be paid the sum due her from the Workmen's Compensation suit "she should certainly be able to pay the costs incurred in connection with this appeal." To this counsel replied under date of December 19th at considerable length, indicating great interest in but lack of knowledge of, whether Mrs. King had been paid the recovery in question, suggesting that no hearing need be had, that Mrs. King could not attend for lack of funds, and finally that the hearing be set for the latter part of the same week or at the court's earliest convenience after Christmas Day.

The hearing was had on December 28th, which was slightly more than 30 days after the date of entry of the judgment in Cause No. 25798, from which Mrs. King was attempting to appeal, although there is little to indicate that this latter fact was realized at the time by either the parties or the judge. The only thing in the way of evidence there presented or suggested for Mrs. King was a formal affidavit of her present husband, which added no information to her original pauper's oath. Mr. Cobb, however, on behalf of the respondent-defendant Transport Company, stated under oath that the judgment in the Workmen's Compensation case against his other client, Pan American Insurance Company, was final and would *shortly* be paid off in full and then and there offered to pay $250 "on account." Under cross examination he stated further that he had been authorized by Pan American to pay the judgment ever since November 23rd (prior to entry of judgment in Cause 25798) but had

never paid it because of the pendency of the "supplemental motion for rehearing" later returned to its author by the Supreme Court on December 19th. We think it a necessary construction of Mr. Cobb's testimony and other voluntary statements to the court at the hearing that his December 1st affidavit of contest, while it made no reference on its face to this interest of hers in the Workmen's Compensation judgment, was yet based entirely upon it and, but for it, would not have been made at all.

Although the statutory 30 days for filing a bond or deposit had already expired, the judge expressly reserved his ruling for "ten days," "to see if Pan American hasn't paid off that judgment so that woman will have that money available for use for that appeal if she wants it." He thereafter, on January 6th, 1956, formally sustained the contest, without making any specific findings, and on January 13th, Mrs. King (having probably collected meanwhile her Workmen's Compensation judgment) filed the bond, which the clerk of the appellate court, and later the court itself, have considered to have been filed too late to invoke appellate jurisdiction.

So far as this latter conclusion goes, we agree with it. As clearly held in De Miller v. Yzaguirre, 143 S.W. 2d 425, in which we refused writ of error unconditionally, the two appeal routes of bond and pauper's oath are jurisdictional and alternative, and, for all the apparent impression of counsel and the trial judge in Cause No. 25798 to the contrary, a contest over a pauper's oath does not operate to extend the time for filing a bond beyond the 30 days specified in Rule 356, where the contest is sustained. The cited case so holds and there is admittedly nothing in the language of the Rules themselves to indicate otherwise. In the vast majority of appeals there is no confusion whatever created by the Rules as they stand in this particular, and to have them provide for an extension might well open the door to abuse of a privilege reserved only to the very poor as well as provoke additional procedural questions in courts already disproportionately concerned with procedural litigation.

But whether the contest of the pauper's oath should have been sustained is something else, although normally the fact that the hearing on the contest happens to occur—as here— after the final day for filing an appeal bond has not the least bearing on the merits of the contest.

The question the relators raise here—and, we think, raised adequately, if imperfectly, at the hearing also—is one not in-

volved in the De Miller case, to wit, the effect on the relator's right of appeal under the pauper's oath route of legal lack of good faith in the contest itself. If that contention is correct, the facts that in an ordinary contest the burden of proof is on the alleged pauper and that no evidence was introduced by Mrs. King at the contest hearing would not be material.

Mr. Cobb's afore-mentioned affidavit (December 1st) stated that both Mr. King and Mrs. King were able to pay or give security for the appeal costs, and, as above indicated, his own words at the subsequent hearing demonstrate that his affidavit meant to refer only to Mrs. King's expectations of payment from his client, Pan American Insurance Company, in the then virtually ended Workmen's Compensation suit. But, while thus swearing in clear effect that Mrs. King had the money, he was admittedly proceeding at that very moment on the theory that she did not have it and might not get it for some time from either Pan American or the other insurer involved in that suit. On that date he was himself holding back the money in the hope that his "supplemental" motion for rehearing in that suit would be granted and cause him not to have to pay it.

Now Mrs. King either had access to the funds in question on December 1st or she did not, and Mr. Cobb knew about this better than anyone else, being the one who was to pay them if they were to be paid. His affidavit was intended to give the impression that she then had the benefit of them. Actually she did not, because she had not been paid and, at least according to his own hopes, might not be paid by Pan American or anyone else for some time to come. That he or anyone else may have naturally regarded her expectations as an asset of sorts does not justify his affidavit under the circumstances, when he should have known that only a short delay might be fatal to her right to appeal by the bond route and that he himself would or could delay the payment, as indeed he actually did for over 27 days after making the affidavit of December 1st and even over 9 days after the return of his supplemental motion for rehearing. Conceding his right to withhold payment as long as he could, he yet had no right to withhold it with the idea of possibly never making it and at the same time swear that Mrs. King had the benefit of it for her appeal in Cause No. 25798.

Such being the case, we think it follows that Mrs. King is entitled to relief. The affidavit being in the legal sense not made in good faith, it was not a contest at all, despite being in due form and in nowise misleading on its face. This should have been

little, if any, less obvious to the trial judge than it was, or should have been, to Mr. Cobb. The point was certainly brought out at the hearing sufficiently for the judge to have grasped it. That he failed to do so (but, on the contrary, thereafter sustained the contest apparently because Mrs. King had eventually received her money—when she could not use it) was an error too clear and unjustifiable to be disregarded even in a collateral proceeding like the present. In more conventional language, it was an abuse of discretion.

Even if Mr. Cobb's affidavit had stated the full facts, it would still have been clear error to sustain the contest, because the affidavit would then have been insufficient on its face to justify such action. The mere possibility of having funds in time to make the bond is not the same as actually having them, especially when the person who in fact controls the time of payment obviously has no intention of making payment at that time and moreover is professionaly interested on behalf of another client in defeating the appeal. In this latter connection, the fact that the lawyers and judge concerned may have been under a misapprehension as to how long Mrs. King could delay filing an appeal bond does not keep the decision from being an abuse of discretion.

As to the appeal of the guardian ad litem, we conclude it to have been perfected by the mere notice of appeal given in the judgment sought to be appealed. By the terms of Art. 2276, Vernon's Texas Civ. Stats., "executors, administrators and guardians appointed by the courts of this state shall not be required to give bond on any appeal or writ of error taken by them in their fiduciary capacity." We see no good reason why "guardians appointed by the courts" should be taken as not including guardians ad litem, especially when we have already so held in a case where the guardian ad litem represented minor intervenors claiming life insurance proceeds in an interpleader suit of the insurer. Schonfield v. Turner (Texas) 6 S.W. 628. Rule 173, supra, expressly contemplates appointment of such guardian for minor plaintiffs, and the subject matter of that rule being well within the procedural field, the rule-making authority was thus acting well within its power in adopting the rule, as it did, in substitution of old Art. 2159, Vernon's Texas Civ. Stats, although the latter mentioned appointments only on behalf of parties defendant.

There is no inconsistency between Rule 173 and Rule 44, which latter provides that incompetents who have no legal

guardian "may" sue by "next friend," who "shall have the same rights concerning such suits as guardians have but shall give security for costs, or affidavits in lieu thereof, when required." Actually, one might say that Rule 173 has Rule 44 very well in mind, since it is expressly designed for the case—which we have here—in which the incompetent is already represented in the suit by "next friend" (or "a guardian"), but in which the latter "appears to the court to have an interest adverse to" that of the incompetent. In other words, Rule 173, in so far as parties plaintiff or intervenors are concerned, provides only for the narrow group of situations in which the suit is begun by the "next friend" process under Rule 44 (or by permanent guardian) but the court thereafter is advised or comes to believe that such existing representative is adversely interested. Rule 173 thus provides for a contingency not covered by Rule 44, to wit, the appearance, after the suit is filed, of a probable conflict of interest between representative and represented. If we should, for example, assume Rule 173 not to exist in next friend cases, there would certainly be no express provision in the Rules for the conflict of interest situation, and where such a situation should actually arise, the court would be faced with the question of reading into Rule 44 a provision for a substitute next friend.

Nor does the additional consequence of Rule 173, of a court appointed representative, with privilege to appeal without bond, suggest a conflict with Rule 44, which expressly denies such privilege to a "next friend." It is altogether natural that in conflict situations the substitute representative should be court appointed, and in turn this important difference between the "next friend" of Rule 44 and the guardian ad litem of Rule 173 naturally and properly invokes Art. 2276, supra.

We acordingly adjudge that both relators, Mrs. King (in her own right) and Mr. Woody as guardian ad litem of the minors, are entitled to the mandamus as prayed. Under our established practice, however, the writ itself will be withheld pending compliance with our holding by the Clerk and Justices of the Court of Civil Appeals, which will undoubtedly follow. Costs are adjudged against the respondent, Keystone-Fleming Transport Company.

Opinion delivered July 11, 1956.

Rehearing overruled July 25, 1956.