**Opinion issued August 16, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00226-CV

———————————

## IN RE KC GREENHOUSE PATIO APARTMENTS, LP, Relator

---

**Original Proceeding on Petition for Writ of Mandamus**

---

## O P I N I O N

In this original proceeding arising out of a wrongful death lawsuit, KC Greenhouse Patio Apartments, LP challenges the trial court's order removing a minor child's mother, Shardae Redman, as the child's next friend and appointing the child's paternal grandfather, Kenneth Brooks, Sr., as next friend and guardian

ad litem.[1] Because we conclude that the trial court exceeded its authority by removing Redman and appointing Kenneth Brooks Sr. as the child's next friend and guardian ad litem, we conditionally grant the petition for writ of mandamus.

## Background

After Kenneth Brooks, Jr. was shot and killed in the parking lot of Greenhouse Patio Apartments, his estate, parents, and minor daughter sued Greenhouse for failure to keep the parking lot safe.[2] Kenneth Brooks Jr.'s daughter, Kendra Brooks, was represented in the lawsuit by her mother, Shardae Redman, as next friend. Redman was not married to Kenneth Brooks, Jr. at the time of his death.

Initially, Redman was also a plaintiff in the suit in her individual capacity, but plaintiffs' counsel dropped Redman as a plaintiff in an amended petition. On the same day plaintiffs' counsel amended the petition, he also moved to withdraw from representing Redman in her individual capacity and as Kendra's next friend, asserting that Redman refused to participate in the case's prosecution.

After Redman failed to respond to discovery directed to her and her daughter's claims, Greenhouse moved to dismiss Redman's claims, both

---

[1]     Relator identifies the underlying case as *Thomas et al. v. KC Greenhouse Patio Apartments, LP et al.*, No. 2009-46107 in the 129th District Court of Harris County, Texas, the Honorable Michael Gomez presiding.

[2]     In amended pleadings, plaintiffs named additional defendants in the suit.

individually and as Kendra's next friend. Plaintiffs then moved to remove Redman as Kendra's next friend and to appoint a guardian ad litem. After a hearing, the trial court appointed a guardian ad litem to "investigate whether a conflict exist[ed] as between Shardae Redman and the minor Kendra Brooks" and report his findings to the trial court. Greenhouse challenged that order in a petition for writ of mandamus, which this Court denied. *In re KC Greenhouse Patio Apartments, LP*, No. 01-11-00684-CV, 2011 WL 4507228 (Tex. App.—Houston [1st Dist.] Sept. 29, 2011, no pet.).

At a subsequent hearing, the appointed guardian ad litem, Rick Molina, testified that he had been unsuccessful in his attempts to communicate with Redman. He testified that he called a phone number provided for her and a woman answered the phone but, after he told her that he was an attorney, she hung up on him "at least half a dozen times." At one point, the woman informed him that she would not speak with any attorney, then hung up the phone. Molina further testified that he had gone to Redman's home, knocked on her door, left his card, and asked her to call him, to no avail. His opinion was that Redman would not cooperate in the case in any respect. Although the record indicates that Redman received notice of the hearing, she was not subpoenaed and did not attend the hearing. After the hearing, the trial court entered an order removing Redman as Kendra's next friend and appointing Kenneth Brooks, Sr. (hereafter, "Brooks"),

3

Kendra's paternal grandfather, as Kendra's "next friend/guardian ad litem" for purposes of this litigation. Greenhouse filed this petition for writ of mandamus challenging that order.

## Standard of Review

Mandamus is an appropriate method for challenging the appointment of a guardian ad litem.[3] *See* TEX. R. CIV. P. 173.7(a) ("Any party may seek mandamus review of an order appointing a guardian ad litem or directing a guardian ad litem's participation in the litigation."). We review an appointment of a guardian ad litem under an abuse of discretion standard. *See Davenport v. Garcia*, 834 S.W.2d 4, 24 (Tex. 1992); *McGough v. First Ct. of Appeals*, 842 S.W.2d 637, 640 (Tex. 1992) (orig. proceeding) (op. on reh'g). A trial court abuses its discretion when it issues an order it has no power to render or when it acts arbitrarily, capriciously, and without reference to guiding principles. *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999); *McGough*, 842 S.W.2d at 640.

When construing rules of civil procedure, courts apply the same rules of construction that govern the interpretation of statutes. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 579 (Tex. 2012) (citing *In re Christus Spohn Hosp. Kleberg*, 222

---

[3] Real parties in interest argue that Greenhouse's petition for mandamus fails because Greenhouse failed to show that it did not have an adequate remedy by appeal. We disagree. Because rule 173.7 specifically authorizes Greenhouse's challenge to the trial court's order by mandamus, Greenhouse need not independently establish that it has no adequate remedy by appeal. *See* TEX. R. CIV. P. 173.7(a).

4

S.W.3d 434, 437 (Tex. 2007)). Thus, we first look to the plain language of the rule and construe it according to its plain or literal meaning. *Id.* (citing *In re E.A.*, 287 S.W.3d 1, 5 (Tex. 2009)). We give the rules a liberal construction so as "to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law." *Id.* (quoting TEX. R. CIV. P. 1).

### Removal of Redman and Appointment of Brooks as Kendra's Next Friend Under Rule 44

Because the trial court's order appointed Brooks as both next friend and guardian ad litem, we must determine if either appointment is authorized under the Rules of Civil Procedure. The trial court replaced Redman as Kendra's next friend on the ground that she appeared to the trial court to have an interest adverse to Kendra in light of Redman's refusal to cooperate in the prosecution of Kendra's claims and to respond to discovery. *See* TEX. R. CIV. P. 173.2(a)(l). Although Redman asserted claims as Kendra's next friend, Kendra was the actual claimant. *See Intracare Hosp. N. v. Campbell,* 222 S.W.3d 790, 795 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see also Byrd v. Woodruff*, 891 S.W.2d 689, 704 (Tex. App.—Dallas 1994, writ dism'd by agr.) ("The next friend is present in a representative capacity only, and the minor remains the real party in interest.").

Greenhouse contends that rule 44 does not authorize the trial court to appoint Brooks as Kendra's "next friend" because Kendra has a legal guardian and

this litigation is not the proper vehicle for replacing Redman as Kendra's legal guardian. We agree.

Rule 44 provides that a minor "who ha[s] no legal guardian may sue and be represented by [a] 'next friend[.]'" TEX. R. CIV. P. 44. Kendra has a legal guardian: Redman. As Kendra's mother, Redman has "the right to represent [Kendra] in legal action and to make other decisions of substantial legal significance concerning [Kendra.]" TEX. FAM. CODE ANN. § 151.001(a)(7) (West 2008). Rule 44 does not authorize a trial court to transfer that right from a minor's parent to a third party by unilaterally replacing the parent as the minor's "next friend" when a conflict of interest arises.

If a minor is represented by a guardian or next friend, rule 173 authorizes a trial court to appoint a guardian ad litem for a minor when (1) "the next friend or guardian appears to the court to have an interest adverse to the party" or (2) the parties agree to the appointment. TEX. R. CIV. P. 173.2(a)(l), (2). Thus, rule 173—not rule 44—is the rule that grants a trial court authority to address conflicts of interest, and it does so through the appointment of a guardian ad litem, not the replacement of the next friend. *See* TEX. R. CIV. P. 44, 173; *King v. Payne*, 292 S.W.2d 331, 335 (Tex. 1956) (stating that rule 173 provides for situation in which conflict of interest arises between minor and her guardian or next friend—"a contingency not covered by Rule 44"); *see also King*, 292 S.W.2d at 341−42 (J.

6

Garwood, joined by J. Smith, dissenting) ("If we should, for example, assume Rule 173 not to exist in next friend cases, there would certainly be no express provision in the Rules for the conflict of interest situation, and where such a situation should actually arise, the court would be faced with the question of reading into Rule 44 a provision for a substitute next friend."); *Byrd*, 891 S.W.2d at 705 (stating that rule 173 provides for contingency not covered by rule 44: appearance, after suit is filed, of probable conflict between real plaintiff and next friend). Neither rule 44 nor rule 173 permits another person to sue as next friend for a minor who has a legal guardian or permits a court to replace a legal guardian with another person to act as next friend for purposes of pursuing a lawsuit on behalf of a minor.

In the trial court, plaintiffs relied on *R.H. v. Smith*, 339 S.W.3d 756 (Tex. App.—Dallas 2011, no pet.), to support their requested relief. But in *R.H.*, the third party took action in the family court to transfer the right to represent the minor in litigation from the minor's parent to the grandparents—action that was not taken here. *See id.* at 759. In *R.H.* a minor's father and grandparents each sought separately to represent the child as "next friend" in a wrongful death lawsuit. *Id.* at 759−60. The grandparents challenged the authority of the attorney retained by the father to pursue the lawsuit. *Id.* The trial court held, and the court of appeals affirmed the holding, that the grandparents, rather than the father, had the exclusive legal right to represent the minor in the lawsuit because the family court had

appointed the grandparents as the minor's joint managing conservators. *Id.* at 759, 764. Here, by contrast, Brooks has not gone to the family court to obtain any custodial or guardianship rights with respect to Kendra; absent a proper order transferring those rights to Brooks or another third party, those rights remain with Kendra's mother.

Because rule 44 did not authorize the trial court to remove Redman and appoint Brooks as Kendra's next friend under the circumstances of this case, the trial court could not rely on that rule as a basis for removing Redman and appointing Brooks as Kendra's next friend in this action.

## Appointment of Brooks as Kendra's Guardian Ad Litem Under Rule 173

Real Parties in interest sought appointment of Brooks as Kendra's guardian under rule 173 of the Rules of Civil Procedure, which governs the procedure for appointing a guardian ad litem in civil litigation when there is an apparent adverse interest between a minor and her next friend or guardian. *See* TEX. R. CIV. P. 173; *see also Ford Motor Co. v. Chacon*, No. 10-0506, 2012 WL 2476793, at \*3 (Tex. June 29, 2012) (stating that rule 173 "governs the procedure for appointing . . . a guardian ad litem").[4] Greenhouse contends that rule 173 also does not authorize

---

[4]     The Family Code provides for appointment of guardians ad litem in certain family law cases and governs the role and procedures applicable to guardians ad litem appointed thereunder; Rule 173 "does not apply to an appointment of a guardian ad litem governed by statute or other rules." TEX. R. CIV. P. 173.1.

8

removing Kendra's mother, Redman, and appointing her grandfather, Brooks, as Kendra's guardian for five reasons. First, Greenhouse contends that Brooks's appointment was unauthorized because any potential conflict of interest between the minor and her mother disappeared when plaintiffs' counsel dropped the mother's individual claims. Second, Greenhouse contends that rule 173 does not authorize Brooks's appointment because only an adverse interest in the division of settlement proceeds can constitute an adverse interest under rule 173, and no such adverse interest is present here. Third, Greenhouse contends that a next friend may conclude that it is in the minor's best interest not to pursue a claim, and that decision does not constitute an adverse interest. Fourth, Greenhouse contends that Brooks is not a proper guardian because he has his own wrongful death claim and therefore has an interest adverse to Kendra with respect to the division of settlement proceeds. Fifth, Greenhouse argues that Redman's refusal to prosecute Kendra's claims does not prejudice Kendra because she is entitled to bring her claims on her own behalf once she turns eighteen.

The appointment of a guardian ad litem implicates two distinct interests: that of the parents in raising their minor children and that of the state to protect children. Parental authority over decisions involving parents' minor children derives from the liberty interest contained in the Fourteenth Amendment to the United States Constitution. *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054,

2060 (2000) (plurality opinion); *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S. Ct. 625, 626 (1923) (liberty interest protected by Fourteenth Amendment includes right to raise children). One of these rights is codified in section 151.001 of the Family Code: a minor child's parents have "the right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child." TEX. FAM. CODE ANN. § 151.001(a)(7); *see also In re Collins*, 242 S.W.3d 837, 847 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding) ("in the absence of an order to the contrary, a child's sole surviving parent can bring suit on the child's behalf, even though no court order appoints the parent as the sole managing conservator"). This "exclusive power" granted to parents may not be exercised by a third party absent an appropriate court order. *See Munoz v. II Jaz Inc.*, 863 S.W.2d 207, 209 (Tex. App.—Houston [14th Dist.] 1993, no writ); *see also Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 446 (Tex. 1998) ("only the parents or guardians of a minor may represent their legal interests"). And when the parents make decisions about the well-being of their children, courts are to presume that the parent is acting in the child's best interest. *Troxel*, 530 U.S. at 68, 120 S.Ct. at 2061; *Lehmann v. Har-Con Corp.*, 76 S.W.3d 555, 565 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (stating that law presumes parents "act in the best interests of their children") (citing *Troxel*); *cf.* TEX. FAM. CODE ANN. §§ 153.131(b) (West 2008) (providing for "rebuttable

10

presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child"), 153.433(a)(2) (West Supp. 2010) (granting grandparent possession of or access to child only if grandparent has overcome "presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that the denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being").

The Supreme Court further explained in *Parham v. J. R.*, 442 U.S. 584, 602, 99 S. Ct. 2493, 2504 (1979):

> The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions. More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children.

Indeed, the parents' right to make decisions concerning their children's care, custody, and control is one of constitutional dimension. *See Troxel*, 530 U.S. at 66, 120 S. Ct. at 2060; *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 622 (Tex. 2004) (quoting *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976)); *In re D.M.D.*, 363 S.W.3d 916, 920 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *In re Mata*, 212 S.W.3d 597, 604–05 (Tex. App.—Austin 2006, orig. proceeding). "So long as a parent adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family." *In re*

*Mays–Hooper,* 189 S.W.3d 777, 778 (Tex. 2006) (per curiam) (quoting *Troxel*, 530 U.S. at 68, 120 S. Ct. 2054).[5]

A parent's rights are not, however, absolute. In some limited circumstances, a trial court, acting on behalf of the state and as *parens patriae*, must step in because of the state's role of protecting minors from harm. *See Farmers Grp., Inc. v. Lubin*, 222 S.W.3d 417, 423 (Tex. 2007) (stating that *parens patriae* generally applies "only with respect to persons unable to protect themselves, such as children, or the mentally ill."). "A state has a *parens patriae* interest in preserving and promoting the welfare of its children. The State of Texas has the authority and duty to guard the well being of children, even if so doing requires limiting the freedom and authority of parents over their children." *Alvarez v. Tex. Dept. of Protective & Regulatory Servs.*, No. 03-02-00008-CV, 2002 WL 31599225, at *1 (Tex. App.—Austin Nov. 21, 2002, no pet.) (not designated for publication) (citation omitted); *see also* Roy T. Stuckey, *Guardians Ad Litem As Surrogate Parents: Implications for Role Definition and Confidentiality*, 64 FORDHAM L. REV. 1785, 1794 (1996) [hereafter, "Stuckey"] ("The government's claim of authority to insert itself into children's lives by appointing guardians ad litem is based on the doctrine of *parens patriae*, which maintains that the government, like

---

[5] There is no evidence or contention that Redman is not a fit parent.

12

a parent, has a general responsibility for the welfare of its infant children and a resulting duty to act to protect that welfare when there is reason to believe that natural parents will not do so.").

When parents sue on behalf of their minor children, trial courts have—in defined circumstances—a responsibility to protect the minor's best interest through the appointment of a guardian ad litem. TEX. R. CIV. P. 173.2; *Urbish v. 127th Jud. Dist. Ct.*, 708 S.W.2d 429, 431–32 (Tex. 1986). Rule 173 balances the interests of the parent and the state and identifies the circumstance that creates this responsibility: a guardian ad litem should be appointed when it appears to the trial court that the next friend has an interest adverse to the minor. *See* TEX. R. CIV. P. 173.2(a)(1); 173.4(b), (c); *see also Davenport*, 834 S.W.2d at 24; *TXI Transp. Co. v. Hughes*, 224 S.W.3d 870, 920 (Tex. App.—Fort Worth 2007), *rev'd on other grounds,* 306 S.W.3d 230 (Tex. 2010) (stating that, when adverse interest exists between minor and next friend, next friend is not competent to represent minor's interests); *Smith v. Smith*, 720 S.W.2d 586, 591 (Tex. App.—Houston [1st Dist.] 1986, no writ) (when it "appears to the court" that there is a conflict between the interest of a minor and those of his next friend, it is the duty of the court to appoint a guardian ad litem); *Tex. Emp'rs Ins. Corp. v. Keenom*, 716 S.W.2d 59, 67 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). (holding that "proper test" for determining whether to appoint guardian ad litem is "'adverse interest' test" and

13

such appointment is "authorized *only* when it appeared to court that the next friend had an interest adverse to the minor."); *see also Chacon*, 2012 WL 2476793, at *3 ("A guardian ad litem is an officer appointed by the court to assist in protecting a party's interests when that party's next friend or guardian appears to have an interest adverse to the party."); *Brownsville-Valley Reg'l Med. Ctr., Inc. v. Gamez*, 894 S.W.2d 753, 756 (Tex. 1995) ("A trial court can appoint an ad litem during litigation to protect the interests of the minor when a conflict of interests arises.").

A guardian ad litem is necessary when a parent has an interest adverse to a minor child because the parent cannot be presumed to act in the child's best interests in the lawsuit. *See* Stuckey, 64 FORDHAM L. REV. at 1795. Because it interferes with the parent's rights, the appointment is for a limited purpose: it is to protect the minor's interest(s) to which the next friend is adverse, displacing the next friend to the limited extent of that purpose. *See Urbish*, 708 S.W.2d at 431–32; *Am. Gen. Fire & Cas. Co. v. Vandewater*, 907 S.W.2d 491, 493 n.2 (Tex. 1995). The conflict need not actually exist; the potential for conflict is sufficient to justify the appointment of a guardian ad litem. *Owens v. Perez*, 158 S.W.3d 96, 111 (Tex. App.—Corpus Christi 2005, no pet.). But if the conflict of interest subsequently disappears, the trial court should remove the guardian ad litem so the parent may resume her constitutionally protected position. *Gamez*, 894 S.W.2d at 755; *see also id.* at 754 ("it is an abuse of discretion for a trial court to award ad

14

litem fees for services performed after resolution of the conflict of interest which gave rise to the appointment").

The Texas Supreme Court has not defined what constitutes an adverse interest under rule 173 but there are a number of reoccurring situations. Courts most commonly apply the rule to adverse interests relating to the division of settlement proceeds. But courts have applied the rule to other conflicts of interest. For example, when a parent appears as next friend for a minor who has sustained serious injuries requiring medical treatment, an adverse interest may arise because the claim for the child's medical expenses belongs to the parent, while the claim for personal injuries belongs to the child. *See In re Richardson*, No. 09-10-00032-CV, 2010 WL 877558, at * 2 (Tex. App.—Beaumont Mar. 11, 2010, orig. proceeding) (mem. op.). A parent or guardian may also have a conflict of interest in handling the minor's settlement fund, in receiving compensation for services as managing conservators or a similar role, or in the minor's inheritance, should the minor predecease the parent or guardian. *See McGough*, 842 S.W.2d at 640; *Sosa v. Koshy*, 961 S.W.2d 420, 425 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

Applying these principles, we hold that the trial court's appointment of Brooks as Kendra's guardian ad litem is not authorized by rule 173 because under the facts of this case, there was no evidence of a potential conflict of interest between Redman and her daughter at the time of the appointment. In their motion

to remove Redman as Kendra's next friend and appoint a guardian ad litem, the grandparents rely on Redman's conduct as Kendra's representative in the lawsuit—essentially, refusing to participate in the prosecution of the suit in any manner—as constituting the "adverse interest." At the hearing, the trial court relied on this same conduct to determine that appointment of a guardian ad litem was appropriate.

While the trial court proceeded cautiously by first appointing an ad litem for the limited purpose of investigating whether a conflict existed and then appointing someone known to Kendra—Brooks, her grandfather—to serve as guardian ad litem for the purpose of the lawsuit only after Redman refused to speak with the investigating ad litem, the trial court could not remove Redman and appoint Brooks without some evidence of a conflict of interest. There was no evidence of a conflict of interest here. The hearing revealed only that the investigating ad litem did not know why Redman refused to participate in the lawsuit.[6] Thus, at the time of the hearing in question, the trial court had no additional information for determining that a conflict existed except that Redman would not speak with the investigating ad litem about the case. Redman's refusal to speak with a lawyer appointed by a court does not support a finding that she has an interest adverse to

---

[6] The record does not indicate that the trial court itself attempted to contact Redman or that she refused to respond to the trial court.

16

her daughter's interests. While one can speculate about a number of reasons that a parent may not want her child to be a party to a lawsuit brought by the paternal grandparents arising out of the death of the child's father, speculation is not evidence. A court should not lightly set aside a parent's determination of how to raise a child. *See* TEX. FAM. CODE ANN. § 151.001(a)(7) (granting minor child's parents "the right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child.")

After Redman's individual claims were dismissed by her counsel, her only connection with the lawsuit was as a mother determining whether it was in her daughter's best interest to continue the litigation. There is no evidence that she had an interest adverse to her daughter's interests—neither of them was pursuing the lawsuit. Rule 173 does not inquire whether the parent is taking action that is adverse to the minor; it asks whether the parent has an *interest* that is adverse to the minor.[7] Based on this record, Redman did not.

---

[7] Rule 173 does not invite trial courts to second-guess parents' decisions regarding the best interest of their children when there is no conflict between them. *See Davenport*, 834 S.W.2d at 44 (Hecht, J., joined by JJ. Cook and Cornyn, concurring) (stating that trial court "has no discretion to appoint a guardian ad litem for a person whose next friend or guardian has no [] adverse interest, even if the court finds that appointment of a guardian ad litem would be in the person's best interest."). "The law presumes that it is not in the ward's best interests for a guardian ad litem to supplant an otherwise qualified parent, next friend or guardian," and "[e]ven if the guardian ad litem were a more effective representative for the ward, the rights of parents, next friends and guardians cannot be set aside" through the Rules of Civil Procedure. *Id.* at 45.

17

In the absence of evidence that Redman had an interest adverse to Kendra, "this case involves nothing more than a simple disagreement between the [trial court] and [the surviving parent] concerning her children's best interests." *Troxel*, 530 U.S. at 72, 120 S. Ct. at 2063. Courts cannot "infringe on the fundamental right of parents to make childrearing decisions simply because a state judge believes a 'better' decision could be made." *Id.* at 72–73, 120 S.Ct. at 2064; *see also In re Derzapf*, 219 S.W.3d 327, 333 (Tex. 2007) (quoting *Troxel*).[8]

Additionally, the trial court's order appears to appoint Brooks to a role not contemplated by rule 173. Indeed, appointing him as both next friend and guardian ad litem creates confusion about his role. Generally, the guardian ad litem's role is to participate in attempts to settle the case and to advise the court on whether any agreed settlement is in the minor's best interest. TEX. R. CIV. P. 173.4(c), (d)(2). If the parent agrees to a settlement made with the parent individually and as next of friend of the minor, the parent may have an adverse interest concerning the division of settlement proceeds, and the ad litem should advise the court on the division; however, the ad litem's role is "very limited, and no reason exists for the

---

[8] The dissent relies on *Munoz v. II JAZ Inc.* for the proposition that a parent or guardian does not have a right to waive a minor child's claims. 863 S.W.2d. 207 (Tex. App.—Houston [14th Dist.] 1993, no writ). But this case does not present an issue of waiver of Kendra's claims. Even if Kendra's claims are nonsuited or dismissed without prejudice in this lawsuit, she still may pursue an action within two years of her eighteenth birthday. *See* TEX. CIV. PRAC. & REM. CODE § 16.001(b); *Enciso v. Chmielewski*, 16 S.W.3d 858, 859−60 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

guardian ad litem to participate in the conduct of the litigation in any other way or to review the discovery or the litigation file except to the limited extent that it may bear on the division of settlement proceeds." TEX. R. CIV. P. 173, cmt. 3; *see also Jocson v. Crabb*, 196 S.W.3d 302, 306 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (quoting same).

The order here does not place Brooks in any of the roles rule 173 describes. The first role—determining whether Redman had an interest adverse to Kendra— was provided for under the trial court's earlier order, in which the trial court appointed Molin as guardian ad litem "to investigate whether a conflict exists as between Shardae Redman and the minor Kendra Brooks." The other roles described in rule 173 are all tied to settlement negotiations and agreements. Neither party asserts that any settlement has been proposed or considered or that Redman, whom plaintiffs' counsel dropped as an individual plaintiff in this action, has any interest in a potential settlement. Thus, none of these roles for an ad litem apply here.

Acting as Kendra's representative in this lawsuit is not one of the roles a guardian ad litem may perform under rule 173; to the contrary, it is one of the roles a guardian ad litem is specifically prohibited from undertaking. *See* TEX. R. CIV. P. 173, cmt. 4 ("In no event may a guardian ad litem supervise or supplant the next friend or undertake to represent the party while serving as guardian ad litem.");

19

*Davenport*, 834 S.W.2d at 45 (Hecht, J., joined by JJ. Cook and Cornyn, concurring) ("The law presumes that it is not in the ward's best interests for a guardian ad litem to supplant an otherwise qualified parent, next friend or guardian."); *see also Ford Motor Co.*, 363 S.W.3d at 582 (holding that guardian ad litem may be compensated only for "tasks directly and materially bearing on the conflict of interest between [a minor and her guardian] regarding division of the settlement" because only these tasks were "necessary to fulfill the limited role" of guardian ad litem). Rule 173.4 further states that the guardian ad litem "acts as an officer and advisor to the court," which is consistent with the comments' prohibition of a guardian ad litem acting as the minor's attorney. TEX. R. CIV. P. 173.4(a) & 173, cmt. 4; *see also Land Rover U.K., Ltd. v. Hinojosa*, 210 S.W.3d 604, 607 (Tex. 2006) ("A guardian ad litem is not an attorney for the child but an officer appointed by the court to assist in protecting the child's interests when a conflict of interest arises between the child and the child's guardian or next friend.").

The confusion in Brooks's role may create practical difficulties and further impair Redman's rights. The impetus to Brooks's appointment as guardian ad litem was the discovery directed toward Kendra's claims. If Brooks does not know the answers to written discovery about Kendra's claims (such as the identification of physicians or teachers), does Redman have to allow them to interview Kendra? Is

Brooks authorized to sign releases for medical and school records? Can Brooks compel Redman to make Kendra available for deposition or trial? These practical problems bump up against the Texas statute that grants a grandparent access to a minor child only if the grandparent has overcome "the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being." TEX. FAM. CODE ANN. § 153.433(a)(2) (West Supp. 2010); *see also Troxel*, 530 U.S. at 67–75, 120 S. Ct. at 2061–65 (holding, in request by two paternal grandparents for more visitation with their grandchildren than mother was willing to allow, that visitation statute permitting trial court to determine whether visitation was in child's best interests denied parent's due process rights based in part on statute's failure to give any weight to presumption that parents act in best interest of their child).

The trial court implicitly found that Redman's decision not to participate in the lawsuit was not in her daughter's best interest. While the trial court may have been correct, that issue is not determinative in deciding whether to appoint a guardian ad litem;  the trial court "has no discretion to appoint a guardian ad litem for a person whose next friend or guardian has no [] adverse interest, even if the court finds that appointment of a guardian ad litem would be in the person's best interest." *Davenport*, 834 S.W.2d at 44 (Hecht, J., joined by JJ. Cook and Cornyn,

21

concurring). "Indeed, the next friend or guardian has a right to represent the person without the imposition of a guardian ad litem unless a conflict of interest exists." *Id.* "Even if the guardian ad litem were a more effective representative for the ward, the rights of parents, next friends and guardians cannot be set aside" through rule 173. *Id.* at 45.

Because rule 173 does not authorize the trial court's appointment of Brooks as Kendra's guardian ad litem, the trial court abused its discretion in ordering the appointment. *See Collins*, 242 S.W.3d at 848 (conditionally granting writ of mandamus when trial court abused its discretion by ordering father to cease prosecuting minor's claims as next friend and ordering amicus attorney to act as minor's next friend); *In re Fort Worth Children's Hosp.*, 100 S.W.3d 582, 590–91 (Tex. App.—Fort Worth 2003, orig. proceeding) (conditionally granting writ of mandamus to vacate order that appointed guardian ad litem under circumstances not authorized by statute); *see also Gamez*, 894 S.W.2d at 756 (holding that trial court abused its discretion in failing to dismiss guardian ad litem when there was "no dispute regarding the settlement or the proper method of managing [the minor's] recovery" nor "any evidence that a conflict of interest continued to exist between [the minor] and her parents after [her] settlement was placed in the trust").

## Conclusion

We hold the trial court abused its discretion in removing Redman and appointing Brooks as Kendra's "next friend/Guardian Ad Litem." We therefore conditionally grant Greenhouse's petition for writ of mandamus and direct the trial court to vacate its January 30, 2012 "Order of Removal of Shardae Redman as Next Friend of Kendra Brooks and the Substitution of Kenneth Brooks as Next Friend for Kendra Brooks." We are confident that the trial court will promptly comply, and our writ will issue only if it does not.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Justice Higley, dissenting.