**R.H., Appellant,**

v.

**Richard SMITH and Mary Pannebaker, as Next Friends of C.H., a Minor, and Carl Faraday, Appellees.**

No. 05–09–00564–CV.

Court of Appeals of Texas, Dallas.

April 12, 2011.

Kent Wade Starr, Starr & Associates, Dallas, TX, for Appellant.

Dennis D. Conder, Stacy & Conder, LLP, Richard L. Arnold, Dallas, TX, Scott Palmer, Addison, TX, for Appellees.

Before Justices FITZGERALD, LANG–MIERS, and FILLMORE.

## OPINION

Opinion By Justice LANG–MIERS.

This is an appeal from a final judgment rendered pursuant to a mediated settlement agreement. Appellees contend that we do not have jurisdiction because the notice of appeal was not filed timely. We conclude that we do have jurisdiction and affirm the trial court's judgment.

### BACKGROUND

R.H. (Father) testified that S.S. (Mother) was his "common law wife" and that they had two children together—F.H., a boy, and C.H., a girl. Mother and the children were involved in an automobile accident that claimed the lives of Mother and F.H. C.H., five years old at the time, was injured. Father hired attorney Kent Starr to represent him individually and as next friend of C.H. in a wrongful death claim against the other driver, Carl Faraday. Faraday's insurance company agreed to tender his policy's limits of $50,000. After the payment of medical bills, approximately $38,500 of the insurance proceeds remained to be divided among the complainants. The parties filed a friendly suit in October 2007, which also named grandparents Richard Smith and Mary Pannebaker (Mother's parents) as plaintiffs with their own claims for Mother's wrongful death. Grandparents were represented by attorney Scott Palmer. The court appointed a guardian ad litem to protect the interests of the minor child. The parties attended mediation in February 2008, but the mediation was adjourned because of an outstanding issue about the medical liens.

Meanwhile, Grandparents were concerned that Father did not have C.H.'s best interests at heart in settling the lawsuit, so in May 2008 they sought and obtained an order from a family court appointing them joint managing conservators and Father possessory conservator of C.H.[1] The order gave Grandparents "the exclusive right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child[.]" As attorney Palmer was already representing Grandparents on their individual claims against Faraday, Grandparents also asked him to represent them as next friends of C.H. and he agreed.

In August 2008, attorney Palmer sent a letter to attorney Starr advising Starr that Grandparents had been "awarded legal custody" of the child and had hired him to represent them as next friends of the child in the lawsuit. He told Starr that Grandparents agreed to forgo any damages for their individual claims so that C.H. could recover more of the available insurance proceeds:

> As you know, my clients have been awarded legal custody of [C.H.].... With this new development, it is our position that my office represents [C.H.] for her individual claim and the claim for the wrongful death of her mother.
>
> It has been my clients' intent that the full remainder of the settlement funds after liens, expenses, and attorneys fees should be invested for [C.H.]'s benefit. Please advise me in writing, if your client is agreeable to having the remaining funds dedicated to the benefit of his daughter. If your client objects to this proposal, please communicate to me what amount of money he believes he should be awarded. In order to maximize the recovery for the minor child, I

---

1. The record suggests that the order was obtained by default when Father did not appear in court. Father's attorney argued that Father was never served and Father testified he had filed a bill of review in the proceeding. The record appears undisputed, however, that the family court order was still in place at the time of the hearing that is the subject of this appeal.

am agreeing to reduce my attorney's fees to $3,500.

Kindly provide me a response to these issues in the next seven (7) days so we can try to wrap this case up. . . .

About two weeks later, attorney Starr sent a letter to the attorneys of record, including Palmer, proposing that the $50,000 insurance proceeds be divided, after payment of medical liens, $29,515.87 to Father for loss of consortium and $5,000 to C.H. Apparently the parties were unable to agree on how the insurance proceeds would be distributed, because they scheduled the case for mediation in October 2008. The mediation resulted in an agreement awarding Father $9,500 and C.H. $28,515.87. Attorney's fees were not separately stated.

After the parties signed the settlement agreement, but before a hearing to prove up the agreement occurred, Father's attorney (Starr) informed the parties that he intended to seek a contingency fee out of C.H.'s share of the settlement—approximately $9,500 of C.H.'s recovery.[2] At the prove-up hearing, Grandparents' attorney (Palmer) advised the court that the parties disagreed over who represented C.H. and the amount of attorney's fees to be awarded from her recovery. Attorney Starr argued that he represented the child throughout the entire proceedings, including at the mediation, and that Palmer had never made an appearance as, or filed a pleading stating that he was, attorney of record for C.H. Starr argued that he was the attorney who had negotiated a reduction in the medical liens on C.H.'s behalf. Attorney Palmer argued that he had represented C.H. since August 2008, including at the mediation, and his failure to file a pleading to that effect was an oversight because it was a friendly suit. He also

argued that C.H.'s interests were adverse to Father's and, as a result, Father could not serve as her next friend.

The trial court adjourned the hearing to a later date to give the parties an opportunity to "straighten[ ] out" the pleadings. Before the next hearing, attorney Palmer filed an amended petition on behalf of Grandparents as next friends of C.H. and a combined motion to show authority and motion to disqualify Father's attorney. The motion to show authority alleged that the family court order, which was rendered before the mediation that resulted in the settlement agreement, gave Grandparents the exclusive right to represent C.H. in legal matters and that attorney Starr did not have authority to represent C.H. In the motion to disqualify, Grandparents alleged that Father's attorney could not represent Father both individually and as next friend of C.H. because of a conflict of interest.

At the hearing on the motion, the parties presented testimony and documentary evidence. The trial court orally ruled that Palmer represented C.H. and granted the motion to show authority. The trial court signed a final judgment granting the motion; awarding Father and his attorney $9,500; awarding C.H. $27,015.87; and awarding Palmer $1,500 in attorney's fees. The final judgment distributed C.H.'s settlement proceeds as follows:

- $3,000 semiannual payments guaranteed for four years to begin January 2021 and end July 2024;
- $250 per month guaranteed for four years to begin January 2021 and end December 2, 2024;
- $7,500 guaranteed lump sum payable December 2027; and

---

**2.** Palmer argued that Starr sent all parties a letter stating his intention to seek a contingency fee from C.H.'s settlement. Although

this letter was not introduced as evidence, its contents appear undisputed.

- $28,481 guaranteed lump sum payable December 2032.

The judgment stated that the guaranteed distributions were to be funded by the purchase of an annuity policy with a present value cost not to exceed $27,015.87, the amount of C.H.'s settlement.

Father requested findings of fact and conclusions of law and filed a notice of past due findings and conclusions, but the trial court declined to make findings and conclusions. Father raises three issues on appeal: (1) the trial court improperly "rewrote" the settlement agreement inconsistent with the parties' agreement by awarding Palmer $1,500 as attorney's fees out of C.H.'s recovery; (2) the court abused its discretion by granting the motion to show authority; and (3) the trial court erred by refusing to make findings of fact and conclusions of law.

## JURISDICTION

■ Before we turn to Father's issues, we must address appellees' argument that we do not have jurisdiction of this appeal because Father's notice of appeal was not filed timely. The final judgment was signed on March 31, 2009.[3] A notice of appeal must be filed within 30 days of the date the judgment was signed unless something happened to extend that deadline. *See* TEX.R.APP. P. 26.1. Father filed the notice of appeal 49 days after the judgment, on May 19, 2009. He contends that his request for findings of fact and conclusions of law extended the appellate timetable. *See* TEX.R.APP. P. 26.1; TEX.R. CIV. P. 296. Appellees contend that Father's request for findings and conclusions did not extend the deadline for filing the notice of appeal because the trial court was not required to make findings and conclu-

sions in this case. *See* TEX.R.APP. P. 26.1; TEX.R. CIV. P. 296.

Rule 26.1(a)(4) states that the appellate timetable is extended when a request is made for findings of fact and conclusions of law required under rule 296 of the Texas Rules of Civil Procedure or, if not required to be filed, "could properly be considered by the appellate court[.]" TEX. R.APP. P. 26.1(a)(4). Rule 296 states that a trial court must make findings of fact and conclusions of law upon proper request "[i]n any case tried in the district or county court without a jury...." TEX.R. CIV. P. 296. Father timely filed a request for findings and conclusions under rule 296 and a notice of past due findings and conclusions under rule 297. *See* TEX.R. CIV. P. 296, 297. Faraday argues, however, that findings and conclusions were not required under rule 296 because the case was not "tried."

■ A case is "tried" when the court's judgment is based on an evidentiary hearing containing conflicting testimony. *See Linwood v. NCNB Tex.*, 876 S.W.2d 393, 395 (Tex.App.-Dallas), *rev'd on other grounds* 885 S.W.2d 102 (Tex.1994) (per curiam). Although this case involved a mediated settlement agreement, the trial court conducted an evidentiary hearing on the motion to show authority, and the hearing contained conflicting evidence about which attorney represented the child. Consequently, we conclude that the trial court was required to make findings and conclusions upon Father's proper request. *See Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 769–70 (Tex.1989) (concluding that findings and conclusions were required under rule 296 in case in which final judgment rendered upon settle-

---

**3.** Although the final judgment is dated March 31, 2008, it is undisputed that it was actually signed in 2009.

ment agreement and only disputed issue was award of ad litem fees).

Additionally, the Texas supreme court has said that findings and conclusions can properly be considered by the reviewing court when a judgment is, among other things, "based in any part on an evidentiary hearing." *See IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 443 (Tex.1997). After the hearing on the motion to show authority during which the trial court received testimony and documentary evidence, the court rendered a final judgment based on the mediated settlement agreement and evidence presented at the hearings.[4]

Consequently, we conclude that findings of fact and conclusions of law were required and could be considered by us on appeal and that Father's request for findings and conclusions extended the deadline for filing the notice of appeal. *See Magallanes*, 763 S.W.2d at 769–70; *IKB Indus.*, 938 S.W.2d at 443. Pursuant to rule 26.1(a)(4), the notice of appeal was due 90 days after the judgment was signed, or June 29, 2009. *See* TEX.R.APP. P. 26.1(a)(4). The notice of appeal was filed on May 19, 2009, making it timely. As a result, we conclude that we have jurisdiction to consider this appeal.

## ANALYSIS

We address Father's second issue first. In that issue, Father argues that the trial court abused its discretion by granting Grandparents' rule 12 motion to show authority.

■ Rule 12 provides that a party may file a sworn motion stating that the party believes the suit or proceeding is being prosecuted or defended without authority and cause the challenged attorney to appear before the court to show his authority to act on behalf of the other party. TEX.R. CIV. P. 12; *Boudreau v. Fed. Trust Bank*, 115 S.W.3d 740, 741 (Tex.App.-Dallas 2003, pet. denied). At the hearing on the motion, the burden of proof is on the challenged attorney to show his authority to prosecute or defend the suit. TEX.R. CIV. P. 12; *Boudreau*, 115 S.W.3d at 741. The primary purpose of rule 12 is to enforce a party's right to know who authorized the suit. *See Angelina Cnty. v. McFarland*, 374 S.W.2d 417, 422–23 (Tex.1964); *Boudreau*, 115 S.W.3d at 742.

■ We review a trial court's ruling on a motion to show authority for an abuse of discretion. *See Urbish v. 127th Judicial Dist. Court*, 708 S.W.2d 429, 432 (Tex. 1986). A trial court has the responsibility to protect the minor's best interest in a lawsuit filed by the minor, which includes replacing the minor's next friend and attorney if the court believes that either has an interest adverse to the minor. *Id.* at 431–32. In making this determination, a trial court "should consider only the minor's best interest; the interests of the next friend and attorney are irrelevant." *Id.* at 432.

■ In this case, Grandparents filed a rule 12 motion requiring attorney Starr "to appear before the Court and show his authority to act on behalf of [R.H.], Individually and as Next Friend of [C.H.], a minor." The motion was filed in November 2008, after the parties had reached a mediated settlement agreement in October 2008. Grandparents alleged that they obtained a family court order in June 2008 appointing them joint managing conservators of C.H. and giving them the exclusive right to represent C.H. in legal matters. Documents attached to the motion show that Grandparents retained attorney Palmer to represent C.H. The rule 12 motion

---

4. The final judgment stated it was rendered "[a]fter hearing the evidence...."

was combined with a motion to disqualify attorney Starr from representing C.H. because of a conflict of interest.

The court heard evidence on the rule 12 motion first. Starr, as the challenged attorney, had the burden to prove that he had sufficient authority to represent Father as next friend of C.H. Tex.R. Civ. P. 12. Starr presented Father as his sole witness. He also introduced documentary evidence to show, and Father's testimony supported, that Father hired Starr to represent C.H. in the lawsuit and that Father is C.H.'s biological father and surviving parent with authority to represent the child. Father testified that to the best of his knowledge, Starr represented both him and C.H. at the mediation. Although Father appeared to suggest that the mediation was between him and C.H. on the one hand and Grandparents on the other, he admitted on cross-examination that he had been told that the Grandparents did not want any money for their individual claims and, instead, wanted the money they could have recovered to go to C.H. He said that after he learned about the Grandparents' decision not to seek a recovery, "that's when we settled, I assume." And he testified that his understanding of the mediation was "how to divvy up the money between [him] and [his] daughter" and "Palmer's lawyer's fees." His understanding of the agreement "at the end" was that he "was supposed to get [$]9500, my daughter was supposed to get [$]29,000, and you [Palmer] were supposed to get $1500."

At the conclusion of the evidence, attorney Starr argued that Father, as C.H.'s parent, had the right to represent her in legal matters. He argued that the rule 12 motion was moot because it was filed at the prove-up hearing in November, after the case had settled in October. He contended that the rule 12 motion should have been filed in August when Palmer knew that Grandparents intended to try to replace Father as next friend. And he argued that Grandparents had not shown that Starr had not diligently represented C.H. or "obtained reductions" in the amounts of the medical liens.

Attorney Palmer argued that Starr had not carried his burden to prove he had authority to represent C.H. Grandparents did not challenge Starr's authority to institute the lawsuit on behalf of C.H. in the first place, but they argued Starr lost his authority to represent C.H. in August 2008 when attorney Palmer sent Starr a letter stating that Grandparents were "awarded legal custody" of C.H. and that Palmer's "office represents [C.H.] for her individual claim and the claim for the wrongful death of her mother." They argued that the motion to show authority "was not ripe" in August 2008 because it appeared that no one had a problem with Grandparents being C.H.'s next friends. They argued that the issue over who had authority to represent C.H. arose only after attorney Starr asserted a right to a contingency fee from C.H.'s settlement proceeds, which happened after the mediation in October 2008. And they argued that attorney Starr and Father knew the mediation was between Father and C.H., not Father and Grandparents.

The trial court made a finding on the record at the hearing that attorney Palmer represented C.H. and granted the motion to show authority. The court later reduced that ruling to writing.

On appeal, Father argues that the rule 12 motion was moot. He cites the language in rule 12 stating "the motion may be heard and determined at any time before the parties have announced ready for trial" and contends that the motion was untimely because it was filed after the case had settled. He also argues that no new counsel appeared in the case to represent

C.H., and cites *Mobile Homes of America, Inc. v. Easy Living, Inc.*, 527 S.W.2d 847 (Tex.Civ.App.-Fort Worth 1975, no writ) for the proposition that a rule 12 challenge should be made as soon as practicable after new or different counsel attempts to appear in a case. We do not read *Mobile Homes* to stand for that proposition. In that case, the court concluded that the defendants actually presented a plea in abatement, not a rule 12 motion, because the question was whether the plaintiff, Mobile Homes, had the capacity and authority to sue, not whether the attorneys had authority to represent Mobile Homes. *Id.* at 848–49. Consequently, *Mobile Homes* does not apply here.

Although attorney Starr presented evidence that he was authorized to file the lawsuit on behalf of C.H. and that through his efforts the medical liens were reduced, the evidence contradicts his assertion that he continued to represent C.H. after August 2008 and during the mediation. Attorney Starr's letter to the attorneys of record acknowledging Grandparents' decision not to seek a recovery for themselves as stated in attorney Palmer's letter to him and proposing a settlement in which Father got all but $5,000 of the remaining insurance proceeds supports an inference that he knew attorney Palmer was acting on behalf of C.H. And because Starr knew before the mediation that Grandparents were not seeking any recovery for their individual claims, any suggestion that they mediated their individual claims, instead of C.H.'s claims, is without merit. Starr's own client, Father, testified that he understood the mediation was to "divvy up" the proceeds between himself and C.H.

Starr also argues that Palmer never made an appearance or filed a pleading in the proceedings on behalf of C.H. But the trial court adjourned the first hearing to give the parties an opportunity to "straighten[ ] out" the pleadings, which

Palmer did by filing an amended petition on behalf of Grandparents as next friends of C.H., and Starr does not complain about that decision by the court. Finally, the record shows that Grandparents had no reason to file a rule 12 motion before the mediation because there did not appear to be a dispute about who represented C.H. It was only after the mediation when Starr sought additional attorney's fees from C.H.'s settlement that the issue arose over who represented C.H.

We conclude that the trial court did not abuse its discretion by granting the motion to show authority. The evidence showed that Grandparents had the exclusive right to represent C.H. in legal matters, that they hired attorney Palmer to represent C.H. in the proceedings, and that Palmer in fact represented C.H. at the mediation.

Additionally, Father has not argued how the judgment would change with regard to him and cannot show he was harmed by the trial court's ruling. The mediated settlement agreement awarded him $9,500; the final judgment awarded him $9,500. Consequently, he has not shown harm. *See* Tex.R.App. P. 44.1 ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals.").

We resolve issue two against appellant.

◼ In his first issue, Father contends that the trial court rewrote the settlement agreement in the final judgment and, as a result, the final judgment is not enforceable because it is not in strict compliance with the agreement. Father argues that the trial court "unilaterally disregarded the Mediated Settlement Agreement" and "added addition[al] terms and 'reallocated

the monies'" to attorney Palmer by awarding $1,500 to him in the final judgment. We disagree.

■■■■ We review a trial court's judgment on a mediated settlement agreement for an abuse of discretion. *See In re C.H., Jr.,* 298 S.W.3d 800, 804 (Tex.App.-Dallas 2009, no pet.). A final judgment rendered pursuant to a mediated settlement agreement must be in strict or literal compliance with that agreement. *Vickrey v. Am. Youth Camps, Inc.,* 532 S.W.2d 292, 292 (Tex.1976). However, a judgment will not be reversed unless it "add[s] terms, significantly alter[s] the original terms, or undermine[s] the intent of the parties." *Beyers v. Roberts,* 199 S.W.3d 354, 362 (Tex.App.-Houston [1st Dist.] 2006, pet. denied).

The settlement agreement in this case distributed all of the $50,000 available insurance proceeds to Father, C.H., and to pay medical expenses without regard to the amount of the parties' attorney's fees. It awarded Father $9,500 and C.H. $28,515.87. The final judgment awarded these same amounts respectively to Father and C.H., but C.H.'s recovery was reduced by $1,500 for fees to attorney Palmer. In other words, the only difference between the amounts awarded to C.H. in the settlement agreement and in the final judgment is her attorney's fees in the amount of $1,500.

The record shows that attorney Palmer sought only $1,500 as his attorney's fees for representing C.H., and Father testified that he knew his attorney's fees, which were governed by a contingency fee contract with Starr, would come out of his $9,500 recovery. The trial court simply did the math in the final judgment and reflected C.H.'s recovery after subtracting her attorney's fees. The final judgment awarded C.H. $27,015.87 and distributed it pursuant to a structured payout over several years beginning January 2021, when C.H. will be 18 or 19 years old.[5] The record shows that this distribution of the proceeds, including Palmer's fees, was approved by the guardian ad litem and Grandparents. We see no meaningful distinction between the award to C.H. in the settlement agreement and the award to her in the final judgment.

Father argues that the mediated settlement agreement shows it was signed by attorney Starr on behalf of Father individually "and as Next Friend of [C.H.], a Minor" and, as a result, improperly allocated fees to Palmer. This is not true. The settlement agreement was signed by "[R.H.]", "Plaintiff"; "Kent Starr, Attorney for Plaintiff(s)"; "Scott Palmer, Attorney for Smith and Pannebaker"; "Dennis Conder, Attorney for Defendant"; and "Richard Arnold, Ad Litem." The agreement was not signed by anyone "as Next Friend of [C.H.], a Minor." Father's argument to the contrary misrepresents the record.

We conclude that the final judgment is in strict compliance with the mediated settlement agreement. *See Vickrey,* 532 S.W.2d at 292. The separate provision in the judgment awarding attorney's fees from C.H.'s total recovery does not significantly alter the terms of the settlement agreement and does not undermine the intent of the parties. *See id.*

Additionally, Father has not argued he was harmed. *See* TEX.R.APP. P. 44.1. As we previously noted, the settlement agreement awarded Father $9,500, and the final judgment also awarded Father $9,500. Consequently, we fail to see how Father was harmed by a judgment that separately states the amount of attorney's fees to be awarded from a different party's recovery. *See id.*

**5.** The record reflects that the annuity was structured to provide college funds for C.H.

We resolve issue one against Father.

In his third issue, Father contends that the trial court erred by failing to make findings of fact and conclusions of law.[6]

A trial court's refusal to make findings and conclusions upon proper request is presumed reversible error unless the record affirmatively shows that the requesting party suffered no harm. *Magallanes*, 763 S.W.2d at 772; *Willms v. Ams. Tire Co., Inc.*, 190 S.W.3d 796, 801 (Tex.App.-Dallas 2006, pet. denied). The general rule is that a complainant has been harmed if the failure to make findings and conclusions causes him to have to guess at the reason the trial court ruled against him or prevents him from properly presenting his case to the appellate court. *Willms*, 190 S.W.3d at 802. When only one issue is presented to the trial court, a complainant does not usually have to guess at the reasons for the trial court's ruling. *Id.*

In his briefing to this Court, Father does not argue that he had to guess at the reason the trial court ruled against him on the rule 12 motion or how the court's failure to make findings and conclusions affected his ability to present his argument to this Court. He merely argues generally that the trial court was required to make findings and conclusions and, because it did not, we must reverse.

We conclude that the appellate record affirmatively shows Father did not suffer any injury by reason of the trial court's failure to make findings and conclusions. *See id.* We have a complete record of the hearings in this case, and the trial court was asked to determine one issue: Did attorney Starr prove he had authority to represent C.H.[7] Father has not pointed out, and we do not see, how the trial court's failure to make findings and conclusions caused him to guess at the basis for the court's ruling or prevented him from properly presenting his case to this Court.

We resolve appellant's third issue against him.

We affirm the trial court's judgment.

---

6. Practice shows that the appellant will make a general request for findings of fact and conclusions of law and the appellee will file a "detailed proposal 'requesting' a finding on specific elements necessary to support the court's judgment." *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 253 (Tex. App.-Houston [14th Dist.] 1999, pet. denied). That is what happened here—Father filed a general request for findings and conclusions, and Grandparents filed a detailed proposal containing specific findings and conclusions to support the judgment.

7. The record shows that the amount of attorney's fees to be awarded from C.H.'s recovery was not presented to the court as an issue of fact to be determined because attorney Starr's fees were governed by a fee agreement with Father and the evidence is undisputed that attorney Palmer sought only $1,500 in attorney's fees for his representation of C.H.