

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | |
| | § | No. 08-12-00308-CV |
| IN RE GABE SASSIN, | § | |
| | § | AN ORIGINAL PROCEEDING IN |
| RELATOR | § | MANDAMUS |
| | § | |
| | § | |

## **O P I N I O N**

Relator is Gabe Sassin, a non-party witness in the underlying medical malpractice lawsuit. Counsel for Plaintiff discovered Sassin was once the claims attorney hired by Defendant's malpractice insurance carrier and sought Sassin's testimony regarding the policies and procedures used by the carrier to determine whether to honor an insured's request to settle. After being subpoenaed, Sassin moved to quash notice of his deposition and for a protective order. The trial court denied both motions, and Sassin now seeks a writ of mandamus compelling the trial court to vacate its order.[1] *See* TEX.GOV'T CODE ANN. § 22.221 (West 2004); *see also* TEX.R.APP.P. 52. We conditionally grant relief.

### **FACTUAL AND PROCEDURAL BACKGROUND**

---

[1] Although the trial court denied Relator's motions, it stayed his deposition pending the outcome of this mandamus proceeding.

The underlying medical malpractice suit was brought by Betty Brown against Gregory Misenhimer, M.D.[2] Dr. Misenhimer's malpractice insurance carrier, Medicus Insurance Company, hired David Jeans to defend Dr. Misenhimer. During the course of pretrial proceedings, Dr. Misenhimer informed Brown he wanted to settle and retained Michael Volk as his personal counsel to effectuate settlement. On Dr. Misenhimer's behalf, Volk asked Medicus to settle, but Medicus refused. Brown then filed a motion challenging Jeans's authority to continue representing Dr. Misenhimer. The trial court held a hearing on Brown's motion. At the hearing, the trial court admitted into evidence affidavits executed by Dr. Misenhimer and Elizabeth Ali, the claims attorney then assigned to the case.[3] Both Dr. Misenhimer and Ali averred Jeans had the authority to represent Dr. Misenhimer in the medical malpractice case. Jeans asserted the affidavits "prove conclusively that I have the requisite authority to represent Dr. Misenhimer" and requested the trial court to deny Brown's motion. Brown countered that:

> Jeans . . . is conflicted out of the case because he cannot and will not adhere to what should be done in the reasonable investigation of this case.
>     If, in fact, they did the job they should have done in this case and the doctor consented to settling the case, the case should be settled in this particular fact situation.
>
> .                     .                     .
>
> So . . . I decided to file the Rule 12 because of the fact that who represents Dr. Misenhimer, who has Dr. Misenhimer's interest at hand.

The trial judge informed the parties that, although she was taking the matter under advisement, she wanted to hear from Ali and Volk because their testimony was crucial in helping her resolve the motion in light of her two concerns: (1) avoiding delays and protracted litigation; and (2) sparing

---

[2] Brown and Dr. Misenhimer are the real parties in interest in this mandamus proceeding.

[3] Ali was employed by Western Litigation, a third-party administrator retained by Medicus to manage its malpractice claims.

2

the parties the expense and anguish associated with litigation. The trial judge was particularly interested in hearing from Ali regarding "generalized information of how [malpractice insurance] policies are administered, how the attorneys are retained and what the role is of you and also on behalf of Medicus if you have that information."

Ali was unable to furnish the specific information sought by Brown and the trial judge, but identified several individuals, including Sassin, likely to have that information. Jeans re-urged his argument that the affidavits submitted by him were all that the trial court required to deny the motion. The trial court ignored Jeans's pleas and proceeded to examine Volk. After Volk described some of the scenarios that could arise from an insurer's refusal to consent to settlement , the following exchange occurred:

> THE COURT: And Mr. Volk, in your various experiences in handling these kind of representation have you had to do that against an insurance company?
>
> MR. VOLK: I have never had to file a lawsuit but there has been lots of cases where the insurance carrier refused to settle the claim and required the doctor to go to trial.
>
> THE COURT: And after that circumstance, they ended up responsible for the judgment?
>
> MR. VOLK: Sometimes, yes. But sometimes there is a defense verdict and you and I know and everybody in this courtroom knows that statistically the doctor or the health care provider wins a jury trial 80, 85 percent of the time.
> So the gamble is from the insurance carrier's standpoint and they win that gamble most of the time.
>
> THE COURT: And I am glad you made that statement because at the outset I wanted to establish what my concerns were and I think that essentially summed it up for me in your statement.
> And that is if there is a gamble and there is a positive outcome for the physician, then that still doesn't set aside all the anguish and worry that comes with that.
>
> MR. VOLK: That comes with the territory, Judge, unfortunately.

3

THE COURT: Okay. And I appreciate that. And the same thing on the plaintiff's side. It just sometimes extends unnecessarily the litigation and that's what we are here for.

Following this exchange, the trial court continued the hearing.

Brown then noticed the deposition of Sassin and issued a subpoena *duces tecum*. Sassin moved to quash the deposition, objecting to the time and place set forth in the notice because of scheduling conflicts. Sassin also moved for a protective order "based on [the] objectionable and privileged nature of this deposition and the referenced notice."

The trial court held a hearing on Sassin's motion. At the hearing, Sassin's counsel argued that Sassin's deposition was irrelevant in determining whether Jeans had the authority to represent Dr. Misenhimer in the underlying case. Counsel also argued that the information sought by Brown was protected by the attorney-client and work-product privileges. The trial court, however, was not swayed by these arguments and denied Sassin relief. When pressed by Sassin's counsel to articulate the reason why Sassin's deposition was necessary, the trial court responded as follows:

> It is my understanding in the basis of this motion to show authority of David Jeans which is the motion that was before the Court, that is before the Court, just the fact that there is a significant contrary position that has not only been voiced by the defendant doctor but has been actually documented in some form that is contrary to what Mr. Jeans is presenting as his position is significant in my opinion to go ahead and require more investigation.

### MANDAMUS STANDARD

To obtain mandamus relief from the trial court's order, Sassin must meet two requirements. He must show that the trial court clearly abused its discretion and that he has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004).

4

A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law, or if it clearly fails to analyze or apply the law correctly. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005). A trial court has the discretion to order discovery from a non-party, "but may only do so within the confines of the Rules of Civil Procedure." *Haas v. George*, 71 S.W.3d 904, 915 (Tex.App.--Texarkana 2002, no pet.). The scope of discovery permitted by the rules of procedure includes any unprivileged information that is relevant to the subject matter of the action, even if it would be inadmissible at trial, so long as the information is reasonably calculated to lead to the discovery of admissible evidence. *See* TEX.R.CIV.P. 192.3(a). Information is relevant if it tends to make the existence of any fact that is of consequence *to the determination of the action* or defense *more or less probable than it would be without such information.* *See* TEX.R.EVID. 401. Therefore, because discovery is limited to matters that are relevant to determination of the issue before the trial court, an order that compels production of irrelevant matters amounts to an impermissible "fishing expedition" and constitutes an abuse of discretion. *In re CSX Corp.*, 124 S.W.3d 149, 152-53 (Tex. 2003).

A non-party to a suit has no right to appeal a discovery order in that suit and therefore has no adequate remedy by appeal. *In re Metro ROI, Inc.*, 203 S.W.3d 400, 403 (Tex.App.--El Paso 2006, no pet.); *In re Arras*, 24 S.W.3d 862, 864 (Tex.App.--El Paso 2000, no pet.).

### MOTION TO SHOW AUTHORITY

In one issue encompassing three sub-issues—the first of which is dispositive—Sassin argues the trial court erred in denying his motions to quash and for a protective order.[4] In Sassin's first sub-issue, he argues his testimony is unnecessary to resolve Brown's motion to show

---

[4] The other two grounds encompass Sassin's arguments that his testimony was privileged and not subject to discovery because Brown had not: (1) shown substantial need or undue hardship; and (2) made a good faith effort to obtain the information sought from him by less intrusive means.

5

authority.   We agree.

Rule 12 of the Texas Rules of Civil Procedure permits any party to challenge an attorney's authority to prosecute or defend a lawsuit.   TEX.R.CIV.P. 12.   The Rule's primary purpose is to enforce a party's right to know who authorized the suit.   *Angelina Cnty. v. McFarland*, 374 S.W.2d 417, 422-23 (Tex. 1964).   The challenged attorney must appear before the trial court to show his authority to act on behalf of his client.   TEX.R.CIV.P. 12; *R.H. v. Smith*, 339 S.W.3d 756, 762 (Tex.App.--Dallas 2011, no pet.); *Boudreau v. Fed. Trust Bank*, 115 S.W.3d 740, 741 (Tex.App.--Dallas 2003, pet. denied).   At the hearing on the motion, the challenged attorney bears the burden of proof to show the requisite authority.   *Smith*, 339 S.W.3d at 762; *Boudreau*, 115 S.W.3d at 741.   When resolving the motion, the trial court considers and weighs the evidence presented at the hearing.   *In re Guardianship of Benavides*, 403 S.W.3d 370, 376 (Tex. App.--San Antonio 2013, pet. denied); *Smith*, 339 S.W.3d at 762-63.   Typically, a challenged attorney satisfies his burden if he produces an affidavit or testimony from his client indicating the attorney was retained to provide representation in the case.   *See Patton Children's Trust v. Hamlin*, No. 07-07-0488-CV, 2008 WL 3863475, *4 (Tex.App.--Amarillo Aug. 20, 2008, no pet.); *Boudreau*, 115 S.W.3d at 742; *Spigener v. Wallis*, 80 S.W.3d 174, 184 (Tex.App.--Waco 2002, no pet.).

*Discussion*

The issue before the trial court was whether Jeans had the authority to represent Dr. Misenhimer in the underlying litigation.   The issue was not whether Medicus should have consented to Dr. Misenhimer's request to settle the litigation.   That issue is peripheral and the subject of a separate inquiry concerning coverage and bad faith.   Accordingly, the pertinent

inquiry is whether information on the general policies and procedures used by Medicus to evaluate an insured's request to settle is necessary to resolve Brown's motion to show authority. We conclude that it is not.

In light of the affidavits executed by Ali and Dr. Misenhimer, the information sought from Sassin is irrelevant in determining whether Jeans represented Dr. Misenhimer in the underlying litigation. These affidavits were the only evidence presented on the material issue to be resolved by the trial court, and they were admitted without objection. As indicated earlier, both Ali and Dr. Misenhimer averred in their affidavits that Jeans had the authority to represent Dr. Misenhimer. Brown does not argue the affidavits are defective, and there is nothing in the record indicating that they are. Nor does Brown maintain that Ali and Dr. Misenhimer were incompetent to make the affidavits, and there is nothing in the record suggesting they were. *Compare In re Guardianship of Benavides*, 403 S.W.3d at 376-77 (concluding the trial court did not abuse its discretion in finding that attorney did not have authority to represent the proposed ward because evidence indicated the proposed ward, despite signing an affidavit averring the attorney represented him, lacked the mental capacity to retain his own counsel at the time the attorney began representing him). Likewise, nothing in the record suggests Dr. Brown was incapable of discharging Jeans and unilaterally settling Brown's claim against him. That Dr. Misenhimer may have borne the cost of settlement is not germane to resolving the primary matter before the trial court. Moreover, because Brown presented no evidence controverting the averments in the affidavits executed by Ali and Dr. Misenhimer, their affidavits conclusively established Jeans had the authority to represent Dr. Misenhimer in the underlying litigation. *See Boudreau*, 115 S.W.3d at 742; *Spigener*, 80 S.W.3d at 184.

7

Brown counters that Sassin's testimony is necessary for two reasons. Neither reason is persuasive, however.

First, Brown asserts Sassin's testimony was required because the trial judge did not have sufficient evidence to rule on the motion given the specter that Jeans was not representing Dr. Misenhimer's best interests as a result of Dr. Misenhimer's conflict with Medicus. We do not dispute that a conflict of interest may exist here in light of the nature of the tripartite relationship among an insurer, defense counsel, and insured in the context of insurance defense litigation. *See Employers Cas. Co. v. Tilley*, 496 S.W.2d 552, 558-59 (Tex. 1973)(discussing duties of attorney when conflict of interest arises in tripartite relationship). A conflict does not itself preclude an attorney hired and paid by the insurance company from representing the insured so long as the insured consents to that representation. *See id.* at 559 (recognizing that an attorney may continue to represent the insured when a conflict of interest arises if the insured acquiesces in the continuation of such defense).

Here, Dr. Misenhimer consented to Jeans's representation when he obtained liability insurance from Medicus. The insurance policy granted Medicus "the right and duty to defend any **claim** or any **suit** against the **insured** . . . ." [Emphasis in orig.]. In exchange for legal protection against future liability, Dr. Misenhimer gave Medicus not only the right to conduct his defense but also "the authority to select the attorney who will defend the claim and to make other decisions that would normally be vested in the insured as the named party in the case." *N. Cnty. Mut. Ins. Co. v. Davalos*, 140 S.W.3d 685, 688 (Tex. 2004). Also, by executing his affidavit after the conflict arose between him and Medicus, Dr. Misenhimer re-affirmed his consent to Jeans's continued representation in the underlying litigation.

8

Second, Brown maintains that Sassin's testimony is necessary to shed light on "what happens at Medicus if a doctor was forced to trial and then admitted liability" because, under the insurance policy, Dr. Misenhimer risks the denial of reimbursement if he admits liability.[5] However, the information sought by Brown relates to issues of coverage and bad faith, and Brown does not explain, nor do we understand, how this information is relevant in determining whether Jeans had the authority to represent Dr. Misenhimer in the underlying litigation. Further, although nothing in the policy or the law expressly prevents Dr. Misenhimer from retaining personal counsel to investigate and, if necessary, pursue coverage and bad-faith claims against Medicus, those issues are peripheral ones and ultimately irrelevant in deciding Brown's motion to show authority.

By accepting Brown's position, the focus on the pivotal issue was obscured. That issue was whether Jeans had the authority to represent Dr. Misenhimer in the underlying litigation. Jeans met his burden by producing two affidavits indicating he had such authority. Given there was no controverting evidence, the affidavits conclusively established Jeans's authority. The evidence was sufficient to rule on Brown's motion to show authority in favor of Jeans, and it was unnecessary to obtain Sassin's testimony on irrelevant matters to resolve Brown's motion. Accordingly, we conclude the trial court abused its discretion in denying Sassin's motions to quash notice of his deposition and for a protective order. Therefore, because Sassin is a non-party, he has no right to appeal, and therefore no adequate appellate remedy.

---

[5] The insurance policy in question provides that:

> No **insured** covered under this **policy** shall admit any liability, make any voluntary payments or assume any obligation without the Company's written authorization. Doing so will result in the Company denying reimbursement of the payment even though the cost may be otherwise covered by this **policy**. [Emphasis in orig.].

We sustain Sassin's issue.

## CONCLUSION

We conditionally grant Sassin's petition for writ of mandamus and direct the trial court to vacate its order dated September 19, 2012 denying Sassin relief.   Mandamus will issue only if the trial court fails to comply.


July 11, 2014

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.