**Affirmed and Opinion Filed June 28, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-15-00960-CV
_____

## IN THE INTEREST OF C.W.W., A CHILD

_____

### On Appeal from the 302nd Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DF-14-01264-U

_____

## MEMORANDUM OPINION

Before Justices Myers, Stoddart, and Whitehill
Opinion by Justice Whitehill

This case involves the interpretation of a mediation settlement agreement (MSA) in a suit affecting parent–child relationship as that agreement concerns the child's education. In a single issue, the father argues that the trial court abused its discretion by entering an order adjudicating parentage (OAP) that deviates from the parties' unambiguous MSA on that topic.[1] For the reasons discussed below, we conclude that the OAP tracks the MSA's unambiguous terms on that issue and affirm the trial court's order.

_____

[1] The portion of the record containing the OAP was filed here under seal. Placing critical parts of an appellate record under seal potentially complicates our opinions because by statute and rule we must decide each case with a publicly released written opinion describing the case and explaining our decisions. *See* TEX. R. APP. P. 47.1 (all opinions are open to the public and must be made available to public reporting services); TEX. GOV'T CODE § 552.022(a)(12) ("final opinions, including concurring and dissenting opinions, and orders issued in the adjudication of cases" are "public information"). But, in this case, the appellant included both the MSA and a redacted copy of the OAP in the Appendix to its appellant's brief without filing that brief under seal or asking us to treat those materials as being under seal. And the appellee did not object to those materials not being filed under seal. Consistent with the parties' positions regarding confidentiality as shown by their briefing, we have tried to eliminate from our opinion information that we believe the parties would have deemed confidential.

## I. Background

We take these undisputed facts from the record and the parties' briefs:

Father and mother began living together in 2003. Their relationship produced one child, who was born in 2005.

Father and mother separated in 2014 when mother sued father for divorce, alleging that they had been informally married. Father answered with a general denial and a request for attorneys' fees. The trial court entered temporary orders. Later that year, mother filed her "first amended original petition for divorce and petition to establish paternity" in which she denied the existence of a marriage and nonsuited her request for a divorce.

The parties participated in a mediation conducted pursuant to family code § 153.0071(c). That mediation produced the MSA at issue. Among other things, that MSA (i) stipulated that the parties were not married, (ii) stipulated to father's paternity, (iii) addressed typical managing conservator issues, and (iv) disposed of certain personal property items. More specifically, the MSA has several parts addressing the child's education at Dallas Christian Academy (DCA).

The parties endeavored to reduce the MSA to an agreed order adjudicating parentage. But a sticking point was the child's DCA attendance beyond the 2015/2016 school year.

The record does not reflect a motion to enter an order based on the MSA. But the parties agree that the trial court held a hearing to address mother's proposed OAP. They further agree that father at that hearing objected to the proposed language requiring the child's future DCA attendance, absent the parties' contrary agreement.

Nonetheless, the trial judge signed and entered its OAP on April 3, 2015. The OAP provides that, unless the parties agree otherwise, (i) the child is to continue attending DCA, (ii) the parties would share that cost equally, but (iii) father's share of the tuition for the 2015–2016 school year was limited to $4,000.00.

Father timely moved for a new trial, complaining that the OAP misinterprets and thus misapplies the MSA. According to father, the MSA required that the child would remain at DCA for only the 2015–2016 school year and for which father would be required to pay half of the tuition not to exceed $4,000.00.

The new trial motion was denied, and father appealed. For the reasons discussed below, we conclude that the trial court did not abuse its discretion as father claims because the OAP correctly embodies the MSA terms regarding the child's education.

## II. Analysis

### A. Applicable Standards

With certain exceptions not implicated here, a party is entitled to a judgment on mediated settlement agreement that complies with family code § 153.0071(d)'s requirements. *See* TEX. FAM. CODE § 153.0071(e); *In re Lee*, 411 S.W.3d 445, 453 (Tex. 2013) (orig. proceeding); *Milner v. Milner*, 361 S.W.3d 615, 618–19 (Tex. 2012).

We review a trial court's judgment on a mediated settlement agreement for an abuse of discretion. *R.H. v. Smith*, 339 S.W.3d 756, 765 (Tex. App.—Dallas 2011, no pet). Although a final judgment rendered pursuant to a mediated settlement agreement must be in strict or literal compliance with that agreement, we will not reverse that judgment unless it adds terms to, or significantly alters, the agreement's original terms or undermines the parties' intent. *Id.*

When applying these standards to this dispute regarding whether the OAP comports with the MSA's terms, we construe the MSA using ordinary contract construction rules. *See* 361 S.W.3d at 619.

In construing a written contract, we must ascertain and give effect to the parties' intentions as expressed in the document. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005) (per curiam); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229

(Tex. 2003); *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 55 (Tex. App.—Dallas 2006, pet denied). We consider the entire writing and attempt to harmonize and give effect to all of the contract's provisions by analyzing them with reference to the whole agreement. *Frost Nat'l Bank*, 165 S.W.3d at 312; *Webster*, 128 S.W.3d at 229. "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Webster*, 128 S.W.3d at 229.

The parties' intent is governed by what is written in the contract, not by what one side contends they intended but failed to say. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). Thus, "it is objective, not subjective, intent that controls." *Matagorda Cty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 740 (Tex. 2006) (per curiam) (citing *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968)). A court must therefore give terms their plain and ordinary meaning unless the contract indicates that the parties intended a different meaning. *Dynegy Midstream Servs., Ltd. P'ship. v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). And, as a secondary construction rule, courts give effect to written (or typewritten) provisions over printed provisions. *Southland Royalty Co. v. Pan Am. Petroleum Corp.*, 378 S.W.2d 50, 57 (Tex. 1964); *see Alba Tool & Supply Co., Inc. v. Indus. Contractors, Inc.*, 585 S.W.2d 662, 665 (Tex. 1979).

If we cannot harmonize the provisions and give effect to all its clauses, the contract is susceptible to more than one reasonable interpretation and is thus ambiguous. *United Protective Servs., Inc. v. W. Vill. Ltd. P'ship*, 180 S.W.3d 430, 432 (Tex. App.—Dallas 2005, no pet.) (citing *Royal Maccabees Life Ins. Co. v. James*, 146 S.W.3d 340, 347 (Tex. App.—Dallas 2004, pet. denied)).

If after applying the pertinent rules of construction the contract can be given a definite or certain legal meaning, it is unambiguous and the courts should construe it as a matter of law.

*Frost Nat'l Bank*, 165 S.W.3d at 312. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances existing when the contract was entered into. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987). A court may conclude that a contract is ambiguous even absent such a pleading by either party. *Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993).

**B.      Applying the Rules of Construction to the MSA and the OAP**

**1.      The MSA's Unambiguous Terms Regarding The Child's Education**

Here, neither party pled nor contends that the MSA is ambiguous, and we determine that it is not. Furthermore, after applying the above contract construction rules to the MSA, we conclude that the OAP accurately reflects the MSA's terms regarding the child's continued education at DCA for the following reasons:

First, the MSA provides that each parent is to be named a joint managing conservator with the rights and duties specified on an attached schedule:

> 3.      Parents are named Joint Managing Conservators of child, with rights and duties per attached.

Second, the attached schedule, captioned "Form 15-11 Allocation of Parental Rights and Duties," provides that each parent has the "Right to confer with the other parent, to the extent possible, before making a decision concerning the health, education, and welfare of the child." That same schedule further provides that the "Right to make decisions concerning the child's education" is, as indicated by the check-mark, to be exercised "By agreement" after the parents confer with each other. And that provision has a handwritten interlineation stating that that the child's education is to "Continue with DCA":

| Right to make decisions concerning the child's education   Continue w/ DCA | N/A | N/A | | | | ✓ |
|---|---|---|---|---|---|---|

Giving the handwritten portion emphasis over the typed text, the meaning is that the child will continue at DCA unless the parents agree otherwise after conferring with each other.

Third, the MSA adds that (i) mother and father are to share equally in child's DCA tuition; (ii) they are to make their payments in time to receive the discounted tuition; but (iii) father is only obligated to pay $4,000.00 in tuition for the 2015–2016 school year:

8.    Father and Mother share equally in the tuition at DCA. Payment to be made by discount due date. *Father only obligated for $4,000.⁰⁰ of tuition cost for 2015-2016 school year.*

9.    Each side pays their own attorney's fees and costs.

The OAP comports with the above MSA terms. For example, as with the MSA, the OAP gives each parent the right to participate in deciding the child's education, subject to the other parent's agreement. Similarly, consistent with the above MSA excerpts, the OAP further provides that the child will continue his education at "Dallas Christian School"[2] unless the parents agree otherwise:

> IT IS FURTHER ORDERED that the child shall attend school at Dallas Christian School for the balance of his education or until the parents mutually agree to enroll the child in a different school.

The OAP additionally provides that:

> For the 2015–2016 academic year, [father] shall pay $4,000.00 toward the child's private school tuition. In all future years, [mother] shall pay 50% and [father] shall pay 50% of the cost of private school tuition. IT IS FURTHER ORDERED that all payments shall be made on or before the tuition discount deadline.

Comparing the MSA's terms, read as a whole and applying the relevant rules of construction, with their OAP counterparts, read as a whole, we conclude that the OAP's terms concerning the child's education fairly and accurately match what the parties agreed to on that topic as stated in the MSA. Thus, the trial court did not abuse its discretion as father contends.

---

[2] "Dallas Christian *School*" appears to be a misnomer as the parties' briefs refer to the school as "Dallas Christian Academy" and neither party complains about the name in the trial court's order.

## 2. Father's Contra Arguments

Notwithstanding the documents' terms shown above, father relies on only isolated MSA paragraph "8" excerpted above to argue that:

> The handwritten sentence of the MSA clearly and unequivocally limits [father's] obligation for tuition to $4,000.00 while the provision in the Order Adjudicating Parentage imposes a continuing obligation on [father] to pay for subsequent school years. The version adopted by the trial court also subsumes that the child will attend private school after the 2015/2016 school year. This is outside the scope of the provision and clearly not agreed to by the parties. Further, the exclusion of DCA (Dallas Christian Academy) from the tuition provision is an omission of a material term in the MSA.

We disagree for the reasons stated above.

Moreover, paragraph 8's text itself contradicts father's argument. Specifically, the $4,000.00 cap on father's 2015–2016 school year tuition liability implies that the cap does not apply in other years. Thus, paragraph 8 contemplates that the child will attend DCA in years beyond the 2015–2016 school year and that the $4,000.00 cap will not apply in those years.

## III. Conclusion

For the above reasons, we conclude that father has not shown that the trial court abused its discretion in the OAP regarding the parties' rights and duties concerning the child's education. Accordingly, we overrule father's sole issue and affirm the trial court's order.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

150960F.P05

–7–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF C.W.W., A CHILD

No. 05-15-00960-CV

On Appeal from the 302nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. DF-14-01264-U.
Opinion delivered by Justice Whitehill.
Justices Myers and Stoddart participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Cheryl Rene Williams recover her costs of this appeal from appellant Carl William Whitacre.

Judgment entered June 28, 2016.