

# NUMBER 13-15-00306-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ROBERTO VAZQUEZ,                                                              **Appellant,**

**v.**

MARIA ANGELICA VAZQUEZ,                                           **Appellee.**

### On appeal from the 155th District Court
### of Fayette County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Perkes, and Longoria
### Memorandum Opinion by Justice Perkes[1]

Appellant Roberto Vazquez appeals from a final decree of divorce dissolving his

marriage to appellee Maria Angelica Vazquez and dividing their marital property.   By four

---

[1] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, the appeal has been transferred to this Court from the Third Court of Appeals in Austin, Texas.   *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2015 R.S.).

issues, which we treat as one, Roberto argues the trial court abused its discretion by rendering a judgment which modified the terms of the parties' mediated settlement agreement. We reverse and remand.

## I. BACKGROUND

Angelica filed an original petition seeking a divorce from Roberto and the division of their marital property.[2] The parties participated in a mediation on November 25, 2014, which resulted in a mediated settlement agreement (MSA). Through the MSA, the parties divided the community estate, which included bank accounts, vehicles, farm equipment, personal property, and real estate holdings. Roberto received, among other things, "66.248 acres . . . in the T.O. Berry League, A-17 [located at] 144 Schulze Road [(the Schulze property)] . . . contingent upon payment of the $250,000.00 to Angelica." The MSA also awarded Angelica the following:

> $250,000.00 in cash to be paid by Roberto to Angelica on or before January 15, 2015. Robert agrees to begin efforts to secure a loan to pay Angelica $250,00.00 [sic] within 3 business days of the date of this Agreement. Angelica agrees to produce any and all documentation in her possession reasonably required by Roberto to give to a lender to secure a loan against the 66.248 acres and to sign any and all documentation reasonably required by a lender for Roberto to get such a loan. *The Parties agree that this Agreement is expressly contingent upon Roberto getting the loan necessary to allow him to pay Angelica the $250,000.00 required by this Agreement and in the event he is not able to secure such a loan, this Agreement shall be of no further force and effect.*

(Emphasis added). The MSA further provided that "[t]he Parties agree to use their best efforts to try and implement this settlement[.]"

---

[2] The petition alleged that there were "no children under the age of 18 years born of this marriage[.]"

Angelica later filed a "Motion to Award Real Property . . . or to Order Sale of Real Property and to Confirm Terms of Mediated Settlement Agreement." Angelica argued that Roberto "failed to comply with the terms of the MSA by failing to, in good faith, secure a loan to pay the sum of $250,000.00 owed to [Angelica]." Angelica requested "that the [Schulze property] be awarded in full to [Angelica] or . . . be immediately sold, with the sum of $250,000.00 from the . . . proceeds being paid to [Angelica.]"

Roberto subsequently filed a motion to set aside the MSA. Roberto argued that the MSA was contingent upon his ability to secure a $250,000 loan, and, because he was unable to do so, the MSA was of no further force and effect. Roberto also filed a response to Angelica's motion, asserting the same. The trial court held a hearing on the parties' respective motions but did not enter a ruling. Instead, the trial court rendered an order requiring certain financial institutions to produce Roberto's complete loan application files to the parties. Subsequently, the parties filed loan application files from three separate banks. Following a second hearing, the trial court granted Angelica's motion and entered a final decree of divorce which provided in relevant part as follows:

> Except for provisions with regard to sale of the real property and monetary award to [Angelica] as set forth herein from the sale of the real property, agreements in this Final Decree of Divorce were reached in mediation . . . This Final Decree of Divorce is stipulated to represent a merger of a mediation agreement and this Final Decree of Divorce. To the extent there exist any differences between the mediated settlement agreement and this Final Decree of Divorce, this Final Decree of Divorce shall control in all instances.

The trial court ordered that "[the Schulze property] shall be sold 'as is'" and "[f]rom the net sale proceeds, the escrow or closing agent shall assign [Angelica] the sum of . . . $250,000.00 and any additional monies owed to her by [Roberto] (which shall include

3

outstanding attorney's fees and any reimbursements as detailed herein)." The trial court further ordered that "all remaining net sale proceeds from the sale of the [Schulze property] shall be awarded to [Roberto]." Aside from the disposition of the Schulze property, the final decree of divorce disposed of the remainder of the community estate pursuant to the terms of the MSA. The trial court awarded Angelica $6,500 in attorney's fees as well as contingent appellate attorney's fees. The trial court later entered an order appointing a receiver "for the purpose of selling the [Schulze property] according to the terms of . . . the Final Decree of Divorce[.]" This appeal followed.

## II. MEDIATED SETTLEMENT AGREEMENT

Roberto raises the following issues, which we will address as one: (1) "Was the [MSA] in compliance with Texas Family Code [section] 6.602 . . . ?"; (2) "Did [Roberto] comply with the provisions of 'effort' to [s]ecure a loan to pay [Angelica]?"; (3) "Does the trial court have discretion to modify a mediated settlement agreement?"; and (4) "Does the trial court have discretion to enter a judgment that [v]aries from the terms of a mediated settlement agreement?"

## A.    Standard of Review and Applicable Law

In a suit for the dissolution of marriage, an MSA is binding on the parties and irrevocable if the agreement (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation, (2) is signed by each party to the agreement, and (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed. TEX. FAM. CODE ANN. § 6.602(b)-(c) (West, Westlaw through 2015 R.S.). If an MSA meets these statutory

4

requirements, the parties are entitled to judgment on that MSA "notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." *Id.* § 6.602(c); *see also Garcia–Udall v. Udall*, 141 S.W.3d 323, 327 (Tex. App.—Dallas 2004, no pet.). Section 6.602 provides a procedural shortcut for the enforcement of MSAs in divorce cases, eliminating the need for a separate suit to enforce the agreement even when one party withdraws his consent from the MSA. *See Boyd v. Boyd*, 67 S.W.3d 398, 402 (Tex. App.—Fort Worth 2002, no pet.). Accordingly, a trial court must enforce an MSA that meets these requirements unless a party demonstrates that the MSA was illegal or was procured by fraud, duress, coercion, or other dishonest means. *Id.* at 403.

A final judgment founded upon an MSA must be in "strict or literal compliance" with that agreement. *Vickrey v. Am. Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976); *see also Udall*, 141 S.W.3d at 332 (trial court abused its discretion by entering judgment not conforming with MSA in suit affecting parent-child relationship). A trial court may modify the terms of an MSA, so long as those modifications do not add terms, significantly alter the original terms, or undermine the parties' intent. *See Keim v. Anderson*, 943 S.W.2d 938, 946 (Tex. App.—El Paso 1997, no pet.) (finding reversible error when trial court added provision requiring husband to pay $3,500 of wife's attorney's fees); *In re Marriage of Ames*, 860 S.W.2d 590, 592–93 (Tex. App.—Amarillo 1993, no writ) (holding trial court erred when it added terms which "differed significantly from the settlement agreement").

We review a trial court's judgment on a mediated settlement agreement for an abuse of discretion. *R.H. v. Smith*, 339 S.W.3d 756, 765 (Tex. App.—Dallas 2011, no

5

pet.); *In re C.H., Jr.*, 298 S.W.3d 800, 804 (Tex. App.—Dallas 2009, no pet.). We apply the rules of contract interpretation to the MSA. *See Milner v. Milner*, 361 S.W.3d 615, 619 (Tex. 2012) (parties' dispute over interpretation of mediated settlement agreement concerning property division was a matter of contract interpretation). The interpretation of an unambiguous contract is a question of law and is reviewed de novo. *See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999).

**B.     Analysis**

The parties both maintain that the MSA was in compliance with section 6.602 of the Texas Family Code. We observe that the MSA provided the following language: "**<u>THIS AGREEMENT IS NOT SUBJECT TO REVOCATION.</u>**" (bold faced and underlined type in original). The MSA was further signed by the parties and their attorneys. Therefore, we agree that the MSA met the requirements of section 6.602. *See* TEX. FAM. CODE ANN. § 6.602. We also note there were no allegations that the agreement should be revoked because it was illegal or was procured by fraud, duress, coercion, or other dishonest means. *See Boyd*, 67 S.W.3d at 402. As a result, the trial court did not have authority to enter a decree that varied from the terms of the MSA. *See Udall*, 141 S.W.3d at 332.

The MSA unambiguously provided that the agreement was "expressly contingent upon Roberto getting the loan necessary to allow him to pay Angelica . . . $250,000.00[.]" The parties further agreed that "in the event [Roberto] is not able to secure such a loan, [the MSA] shall be of no further force and effect." It is undisputed that Roberto was unable to obtain the loan by the date prescribed in the MSA. Therefore, the MSA, by its

own terms, was of "no further force and effect." Nevertheless, Angelica argues, without citation to any authority, that "the trial court . . . was within [its] discretion to divide the community property no longer covered by the terms of the [MSA] as a result of Roberto's breach of those terms." Perhaps in recognition of the difficulty of securing the loan and delivering the proceeds within seven weeks—November 25, 2014 to January 15, 2015— the parties agreed that the MSA was "expressly contingent" on this occurrence. Parties are bound by the terms of their agreement as written, and this Court cannot rewrite the agreement to change its terms. *Alamo Cmty. Coll. Dist. v. Miller*, 274 S.W.3d 779, 785–86 (Tex. App.—San Antonio 2008, no pet.).

We find no authority for the proposition that a trial court can modify the terms of an MSA due to a party's alleged breach. *See Morse v. Morse*, 349 S.W.3d 55, 56 (Tex. App.—El Paso 2010, no pet.) (concluding breach was not grounds for revocation of an MSA). To the contrary, an MSA complying with section 6.602 is immediately enforceable, not subject to repudiation by a party, and binding on the trial court without approval or determination of whether the agreement's terms are just and right. *See In re Marriage of Joyner,* 196 S.W.3d 883, 887 (Tex. App.—Texarkana 2006, pet. denied); *Cayan v. Cayan*, 38 S.W.3d 161, 164–66 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *see also Spiegel v. KLRU Endowment Fund*, 228 S.W.3d 237, 242 (Tex. App.—Austin 2007, pet. denied) (when MSA meets section 6.602's requirements, it must be enforced in the absence of allegations that the agreement calls for the performance of an illegal act or that it was procured by fraud, duress, coercion, or other dishonest means).

The final divorce decree provided that its terms represented agreements that "were reached in mediation . . . [e]xcept for provisions with regard to sale of the real property and monetary award to [Angelica.]" In that regard, the decree required Roberto to sell the Schulze property and awarded $250,000 of the sale proceeds to Angelica. The trial court was without authority to enter a final divorce decree enforcing certain terms of the MSA while modifying others. *See Udall*, 141 S.W.3d at 332. We hold that the trial court abused its discretion in entering a final decree of divorce which partially enforced and modified an MSA that by its own terms was of "no further force and effect." *See Smith*, 339 S.W.3d at 765; *In re C.H., Jr.*, 298 S.W.3d at 804. We sustain Roberto's issues on appeal.

### III. CONCLUSION

We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

GREGORY T. PERKES
Justice

Delivered and filed the
10th day of November, 2016.