**Reversed and Remanded and Majority and Dissenting Opinions filed August 22, 2024.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-22-00764-CV

---

### WC 4TH AND COLORADO, LP, Appellant

### V.

### COLORADO THIRD STREET, LLC, Appellee

---

**On Appeal from the 261st District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-20-002781**

---

## MAJORITY OPINION

This appeal arises from actions taken by a receiver acting pursuant to a receivership order issued in a separate Harris County suit. The receiver appeared on behalf of appellant WC 4th and Colorado, LP ("WC 4th") in the present suit and claimed to be replacing WC 4th's prior counsel. Along with appellee Colorado Third Street, LLC ("Third Street"), the receiver filed a joint motion to dismiss WC 4th's claims against Third Street, which the trial court granted. In two issues that

we construe as one, WC 4th argues the receiver lacked authority to replace its counsel and dismiss the case. We reverse the trial court's order granting the joint motion to dismiss WC 4th's claims and remand for further proceedings.

## I. BACKGROUND

Nate Paul is a real estate investor who does business through a network of entities that include "WC" or "World Class" in their names.[1] *WC 1st & Trinity, LP v. Roy F. & JoAnn Cole Mitte Found.*, No. 03-19-00799-CV, 2021 WL 4465995, at *1 (Tex. App.—Austin Sept. 30, 2021, pet. denied) (mem. op.). His principal entity is World Class Capital Group ("WCCG"), of which he is the sole member and manager. Financial statements and affidavits from Paul acknowledge that WCCG "is the manager of WORLD CLASS REAL ESTATE, LLC, which is the Manager of WC 4th AND COLORADO GP, LLC, which is the General Partner of WC 4TH AND COLORADO, LP, a Texas limited Partnership."

WC 4th defaulted on a loan held by Third Street. When Third Street began exercising its contractual right to foreclose on the property secured by the loan, WC 4th sought to enjoin the sale in a Travis County district court. WC 4th also filed several counterclaims, including tortious interference with contract. WC 4th subsequently declared bankruptcy, which stayed the foreclosure sale and the pending Travis County suit. *See* 11 U.S.C. § 362 (automatic stay).

While the Travis County suit was pending, a Harris County court in a separate suit ordered WCCG, Paul, and Great Value[2] to pay over $9.7 million in

---

[1] The Supreme Court of Texas ordered the Court of Appeals for the Third District of Texas to transfer this appeal (No. 03-22-00575-CV) to this court. Misc. Docket No. 22-9083 (Tex. Sept. 27, 2022); *see* Tex. Gov't Code Ann. §§ 73.001, -.002. Because of the transfer, we decide the case in accordance with the precedent of the transferor court under principles of stare decisis if our decision otherwise would have been inconsistent with the transferor court's precedent. *See* Tex. R. App. 41.3.

[2] Great Value is another entity of which WCCG is the sole member and manager.

damages to a different lender—Princeton Capital—for failure to pay amounts owed under an unrelated note purchase agreement. *See Great Value Storage, LLC v. Princeton Cap. Corp.*, No. 01-21-00284-CV, 2023 WL 3010773, at *6 (Tex. App.—Houston [1st Dist.] Apr. 20, 2023, pet. granted) (mem. op.), *vacated as moot by*, No. 23-0722 (Tex. Mar. 8, 2024). Because WCCG and Paul did not pay the judgment, the trial court appointed a receiver over WCCG and granted the receiver broad authority to seize, manage, and operate entities in which WCCG had an ownership interest. *Id.* at *6 (the "Receivership Order"). The Harris County court also granted the receiver the express authority to take possession of "all real property . . . causes of action . . . [and] contract rights" owned by WCCG. Acting pursuant to The Receivership Order—and after the bankruptcy stay was lifted and Third Street had foreclosed on the property—the receiver appeared in the underlying Travis County suit on WC 4th's behalf. The receiver then settled the underlying litigation and jointly moved to dismiss with prejudice all of WC 4th's claims and counterclaims in this suit.

WC 4th challenged the receiver's authority through a Rule 12 motion. *See* Tex. R. Civ. P. 12 ("A party in a suit or proceeding pending in a court of this state may, by sworn written motion stating that he believes the suit or proceeding is being prosecuted or defended without authority, cause the attorney to be cited to appear before the court and show his authority to act. . . . Upon his failure to show such authority, the court shall refuse to permit the attorney to appear in the cause . . . ."). The trial court held an evidentiary hearing on the Rule 12 motion, denied the motion, granted the joint motion to dismiss, and signed a final judgment. WC 4th filed a timely notice of appeal challenging the trial court's denial of its motion to show authority and the trial court's dismissal.

## II. ANALYSIS

## A. Collateral attack

As a preliminary matter, we address Third Street's contention that WC 4th's current appeal constitutes an impermissible collateral attack of the Receivership Order. In support of its argument, Third Street cites a series of cases in which courts have held that a party to a judgment, as well as the party's successors in interest, may only challenge the validity of a judgment in the court in which the judgment issued and may not collaterally attack the judgment in a separate proceeding in another court.

A similar argument was made in *WC 4th & Rio Grande, LP v. La Zona Rio, LLC*, No. 08-22-00073-CV, 2024 WL 1138568, at *7 (Tex. App.—El Paso Mar. 15, 2024, no pet. h.) (substitute mem. op.). *La Zona Rio* is another case from the Austin court of appeals involving entities related to Paul and the authority of this receiver, but the case was transferred to the El Paso Court of Appeals instead of our court.[3]

The underlying procedural history of *La Zona Rio* is nearly identical to the present case; *La Zona Rio* stems from the same Receivership Order involving WCCG as the present case. Similar to our case, Rio Grande—another business entity related to Paul—was not a party to the Harris County suit in which the Receivership Order was entered. In *La Zona Rio*, Rio Grande filed suit against La Zona Rio, but a receiver appeared purportedly on behalf of Rio Grande, replaced

---

[3] The court in *La Zona Rio* was also required to apply precedent from the Austin court of appeals to the extent it conflicted with El Paso precedent. *See* Tex. R. App. 41.3. However, there was no indication of a conflict of precedents in *La Zona Rio* and often the court there applied El Paso precedent. Thus, while we are not obligated to follow *La Zona Rio*, we are certainly free to consider it persuasive authority.

Rio Grande's counsel, and filed a motion to dismiss Rio Grande's claims against La Zona Rio. *See id.* at *1. Just as in this case, Rio Grande challenged the authority of the receiver, contending that Rio Grande's arguments amounted to an impermissible collateral attack of the receivership order citing the same cases that Third Street cites in this case. The El Paso Court of Appeals rejected this argument, reasoning as follows:

> [W]e note that turnover orders—and receivership orders in particular—are unique in nature, and while some portions of such an order may be considered final and appealable, other provisions may not. *See Alexander Dubose*, 540 S.W.3d at 586-88. As the Texas Supreme Court has recognized, a turnover order is considered final and appealable when it serves as a mandatory injunction ordering a judgment debtor to turn over assets. *Id.* at 596. However, "other provisions of the same order can be interlocutory and unreviewable because they do not resemble injunctive relief." *Id.* at 587. Thus, in *Alexander Dubose*, the Court held that a provision in a turnover order requiring disputed funds to be deposited in the court's registry did not function as a mandatory injunction and therefore could not be considered a final appealable order, as there had been no adjudication of the ownership of the funds in the turnover order. Instead, the court held that a subsequently issued "release order," which adjudicated ownership of the funds, was the first and only order that could be considered final with respect to ownership of the funds. *Id.*
>
> Here, the Receivership Order contained various provisions authorizing Kretzer to obtain property held by third parties, i.e., the various entities that WCCG purportedly had an interest in, but the order did not adjudicate the substantive rights of those third parties to the extent that they sought to dispute that they held property belonging to WCCG. And as such, those provisions cannot be considered "final" with respect to any third parties affected thereby who have not had their substantive rights adjudicated. *See Mitchell v. Turbine Res. Unlimited, Inc.*, 523 S.W.3d 189, 196 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (holding that a turnover order that authorized a receiver to sell property "subject to third parties' rights" could not be considered a final order, and was instead considered "interlocutory and not appealable").

5

*Id.* at 13. We agree with the El Paso court's reasoning and conclude that WC 4th is not making a collateral attack and had the right to challenge the receivership order in this case to the extent the Receiver was "attempting to enforce the order against it and deprive it of partnership assets that it claims WCCG did not own or control." *Id.*

**B.    The Rule 12 Motion**

WC 4th argues that the trial court abused its discretion by denying its Rule 12 motion to show authority. Rule 12 provides that "[a] party in a suit or proceeding pending in a court of this state may, by sworn written motion stating that he believes the suit or proceeding is being prosecuted or defended without authority, cause the attorney to be cited to appear before the court and show his authority to act." Tex. R. Civ. P. 12. The purpose of Rule 12 is to allow a party to challenge the right of an attorney to represent the *other party* in the litigation. *See* Tex. R. Civ. P. 12 ("At the hearing on the motion, the burden of proof shall be upon the challenged attorney to show sufficient authority to prosecute or defend the suit on behalf of the other party."); *see also In re Sassin*, 511 S.W.3d 121, 125 (Tex. App.—El Paso 2014, orig. proceeding) (recognizing that Rule 12's "primary purpose is to enforce a party's right to know who authorized the suit"). Here, WC 4th's motion did not challenge the receiver's authority to represent *another* party in the *Princeton* suit; rather, it challenged the receiver's authority to appear on its own behalf.

However, in interpreting the nature of a motion or other pleading, we look to its substance, not merely at the form of title given to it. *See* Tex. R. Civ. P. 71 ("When a party has mistakenly designated any plea or pleading, the court, if justice so requires, shall treat the plea or pleading as if it had been properly designated."). Given the substance of WC 4th's arguments that the receiver lacked the authority

6

he claimed to have, we decline to treat it as a Rule 12 motion. Instead, WC 4th's Rule 12 motion should be treated the same as its second issue on appeal, which is simply a challenge to the receiver's authority. For these reasons, we proceed to address WC 4th's issue regarding the receiver's authority.

## C.     Did the Receiver have the authority to act on behalf of WC 4th?

### 1.     Standard of review and applicable law

We review a trial court's ruling on a motion to dismiss for an abuse of discretion; however, pure questions of law that lead to the trial court's ruling are reviewed de novo. *See Gonzalez v. Momentum Design & Constr., Inc.*, 633 S.W.3d 678, 684 (Tex. App.—El Paso 2021, pet. denied).

"A receiver has only that authority conferred by the Court's order appointing him." *Ex parte Hodges*, 625 S.W.2d 304, 306 (Tex. 1981).

### 2.     Application

WC 4th argues that the Receiver lacked the authority to manage or control it or settle its lawsuit for two reasons.  First, WC 4th argues that it is not a subsidiary of WCCG and thus the Order Appointing Receiver did not give Kretzer the authority to take control of WC 4th and dismiss its lawsuit.  In support of this, WC 4th points to the Nate Paul declaration where he states that WC 4th "is not a direct of indirect subsidiary" of World Class, "[World Class] is not a direct or indirect owner" of any partnership or membership interests of WC 4th, and "[the receiver] does not have the authority to appear on behalf of WC 4th."

In response, Appellee Third Street argues that Nate Paul's declaration is conclusory and there is considerable evidence for the trial court to conclude that WCCG was the owner or manager of WC 4th and thus the Receiver was well within its rights to take control of WC 4th.  We need not resolve this issue and will

7

presume, without deciding for the purpose of this appeal, that the Receiver had the authority to act for WC 4th under the Receivership Order.

Second, WC 4th argues that the Receiver had no authority to seize a judgment debtor's interest in a partnership or limited liability company, but rather the Receiver could only obtain a "charging order" to receive the debtor's profits or distributions in the partnership. In *Pajooh v. Royal West Investments LLC, Series E.*, 518 S.W.3d 557 (Tex. App.—Houston [1st Dist.] 2017, no pet.), our sister court held that an individual partner has no ownership interest in the specific property belonging to the partnership and that the partner's interests are limited to his share of profits and losses. *Id*. at 562; *see also* Tex. Bus. Orgs. Code Ann. § 152.101 and 101.106(b) (partnership property is "not property of the partners" and a member of a limited liability company "does not have an interest in any specific property of the company"). As a result, "the entry of a charging order is the exclusive remedy by which a judgment creditor" of a partner, Tex. Bus. Orgs. Code Ann. § 152.101, or a member, Tex. Bus. Orgs. Code Ann. § 101.112(d), may satisfy a judgment. This court has similarly held that a charging order is the exclusive remedy afforded a judgment creditor. *See Klinek v. LuxeYard, Inc.*, 672 S.W.3d 830, 839 (Tex. App.—Houston [14th Dist.] 2023, no pet.); *Bran v. Spectrum MH, LLC*, No. 14-22-00479-CV, 2023 WL 5487421, at *6 (Tex. App.—Houston [14th Dist.] Aug. 24, 2023, pet. filed) (mem. op.).

The charging order procedure was developed to prevent a judgment creditor's disruption of an entity's business by forcing an execution sale of the partner's or member's entity interest to satisfy a debt of the individual partner or member. *See Gillet v. ZUPT, LLC*, 523 S.W.3d 749, 757 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Stanley v. Reef Sec., Inc.*, 314 S.W.3d 659, 664 (Tex. App.—Dallas 2010, no pet.). However, in *Klinek*, we noted that some courts had

recognized the existence of several exceptions to the charging order exclusivity rule. *Klinek*, 672 S.W.3d at 839–40. Specifically, we observed that in *Heckert v. Heckert*, No. 02-16-00213-CV, 2017 WL 5184840 (Tex. App.—Fort Worth Nov. 9, 2017, no pet.) (mem. op.), "the appellate [court] found no error in the turnover of a member's interest in a limited liability company because the company was not operating any business and no party's interest would have been disrupted by granting turnover relief." *Klinek*, 672 S.W.3d at 840.

Appellee Third Street argues that the *Heckert* exception applies since WC 4th is a non-operating, single purpose business with no partners. Thus, argues appellee, there can be no disruption of the business. However, the record reflects otherwise. First, WC 4th consists of third-party partners seemingly unrelated to Nate Paul. The Agreement of Limited Partnership of WC 4th shows that WC 4th and Colorado GP, LLC is the general partner and Sangreal Investments, LLC and Independence Holdings I, LLC are the limited partners. Second, the record reflects that WC 4th rents its property to third parties. Early in the underlying litigation, appellee Third Street sent a "Notice to Pay Rents to Person Other than Landlord," demanding that tenants pay rent to Third Street and not to WC 4th.[4]

Once again, the *La Zona Rio* decision is instructive. There, La Zona Rio argued the *Heckert* exception applied since "Rio Grande, LP was admittedly a 'single purpose entity holding commercial property,' and its business would therefore not be disrupted by ordering a turnover of the property"—exactly the same argument that Third Street makes here. *La Zona Rio*, 2024 WL 1138568, at *15. The El Paso court concluded that *Heckert* was inapplicable:

> [U]nlike the situation in *Heckert*, the evidence reflected that the partnership was an operating business which had been leasing its

---

[4] That demand was subsequently withdrawn.

building space to tenants, and the partnership had three limited partners whose interests were at stake in the La Zona Rio Lawsuit—in addition to the general partner that La Zona Rio claims was affiliated with WCCG. Therefore, the partnership's business was disrupted by Kretzer's actions in utilizing the Receivership Order to allow the partnership's only asset to be alienated to La Zona Rio. And, unlike the situation in *Heckert*, the record before us contains no evidence that WCCG created Rio Grande, LP as a "shell" entity for the purpose of sheltering assets from collection.

Accordingly, we conclude that the provision in the Receivership Order requiring WCCG to turn over any interests it had in a partnership or LLC at most gave Kretzer the right to collect on any distributions or profits to which WCCG was entitled by virtue of any such interest and did not give him the right to take possession of the partnership's assets, which he effectively did by taking control of Rio Grande, LP's lawsuit. *See Pajooh*, 518 S.W.3d at 565 (citing TEX. BUS. ORGS. CODE ANN. §153.256(f) (the "creditor of a partner or of any other owner of a partnership interest does not have the right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited partnership")).

*Id*. at \*15. We agree that *Heckert* is inapplicable. The record reflects that WC 4th is an operating business with third-party limited partners. Therefore, we do not decide whether this court should adopt the *Heckert* exception. A charging order is the receiver's exclusive remedy, and the trial court abused its discretion in granting the receiver's motion to dismiss with prejudice.

We sustain WC 4th's sole issue.

10

## III.  CONCLUSION

WC 4th's appeal is not a collateral attack of the Receivership Order, but the trial court abused its discretion in granting the receiver's joint motion to dismiss with prejudice.  We remand this action to the trial court for further proceedings.


                                    /s/      Randy Wilson
                                             Justice

Panel consists of Justices Jewell, Spain, and Wilson (Spain, J., dissenting).